## Ex parte: In the matter of SAMUEL E. BROWNE.

ATTORNEYS AT LAW — *of the remedy given by statute against them.* A proceeding against an attorney at law under R. S. 66, for failing or refusing to pay over money by him received in his office as an attorney, is designed to afford a remedy to the creditor to collect the money from the attorney.

*Who may relieve them from disability.* The court has power to relieve from a judgment disbarring an attorney at law for failure to pay over money to the party entitled thereto, but will not do so until after payment has been made to the creditor of the money improperly withheld by the attorney.

*Of the effect of pardon in such case.* Under the organic act the power of the governor to grant pardons for offenses against the laws of the Territory does not extend to such case, for, although he may pardon a public offense, he cannot deprive a suitor of his remedy.

ON the 1st day of April, A. D. 1874, and at the February term in that year, Francis M. Piper preferred charges against Samuel E. Browne, Esq., an attorney of this court, for a failure to pay over to him the sum of $400, collected by said Browne as the attorney of said Piper, from the Kansas Pacific Railway Company. Other charges were embraced in the petition which it is unnecessary to notice. Upon this an order was entered requiring the respondent, at the July sitting of the court, to show cause why his name should not be stricken from the roll of attorneys, and upon a hearing in July the respondent was convicted of withholding money from said Piper, after demand therefor, contrary to R. S. 66, and the court ordered that his name be stricken from the roll of attorneys.

At this term Mr. Browne presented his petition to be restored to his privilege as an attorney, upon the ground that he had received unconditional pardon, as stated in the opinion of Mr. Justice WELLS. The instrument issued by the governor was in terms as alleged by the petitioner.

The chief-justice concurred in the result only.

Mr. Justice BELFORD concurred in the opinion of Justice WELLS.

WELLS, J. Samuel E. Browne was disbarred at the July sitting of the court, and now applies to be reinstated. His petition sets forth that on the 5th day of August, Edward M. McCook, then governor of the Territory, granted to him unconditional pardon, whereby, it is averred, "petitioner was restored to all civil rights forfeited by him in consequence of the judgment of this honorable court." The pardon, an exemplification of which is filed with the petition, recites that the petitioner was found guilty of misconduct in his office as an attorney. What particular misconduct was imputed is not set forth, and probably this ought to be shown. We conceive that there may be misconduct in the profession, for which an attorney may be expelled, and which, nevertheless, not being an offense against any public law, would not be relieved by pardon.

Inasmuch, however, as the judgment of expulsion was given in this court, and the whole record is before us, we will judicially notice that the misconduct alleged against the petitioner, to which the pardon refers, was the omission to pay over money collected by him as an attorney, after demand made therefor by his client; that the proceeding was at the instance of the injured party, and in pursuance of sec 6, chap. 7, Rev. Stat., hereafter quoted.

The misconduct imputed to the petitioner may, therefore, be considered in the light of a contempt, as tending to bring the courts themselves into public dishonor.   4 Bl. Com. 284. Considered solely in this light, the offense was clearly within the scope of executive clemency.  What the result may be if we consider the conviction as exhibiting a moral delinquency, unfitting the offender from further exercising the functions of an attorney, I do not propose to consider.

But the petitioner's misconduct involved not only the public offense, but a private injury also, and in the view which a majority of the court have adopted, the proceeding in which the judgment of exclusion was given was in the nature of a remedy to the individual for the redress of this injury.   The statute under which the proceeding was had is as follows :

"Sec. 6. In all cases where an attorney of any court of this Territory, or solicitor in chancery, shall have received, or may hereafter receive, in his said office of attorney or solicitor, in the course of collection or settlement of any claim left with him for collection or settlement, any money or other property belonging to any client, and shall, upon demand made, and a tender of his reasonable fees and expenses, refuse or neglect to pay over or deliver the same to the said client, or to any person duly authorized to receive the same, it shall be lawful for any person interested to apply to the supreme court of this Territory for a rule upon the said attorney or solicitor, to show cause, at a time fixed by the said court, why the name of said attorney or solicitor should not be stricken from the roll, a copy of which rule shall be duly served upon said attorney or solicitor at least ten days previous to the day upon which said rule shall be

made returnable ; and if, upon the return of said rule, it shall be made to appear to the said court that such attorney or solicitor has improperly neglected, or refused to pay over or deliver said money or property, so demanded as aforesaid, it shall be the duty of the said court to direct that the name of the said attorney or solicitor be stricken from the roll of attorneys in said court.

" Sec. 7. Every attorney, before his name is stricken off the roll, shall receive a written notice from the clerk of the supreme court, stating distinctly the grounds of complaint, or the charges exhibited against him, and he shall, after such notice, be heard in his own defense, and allowed reasonable time to collect and prepare testimony for his justification ; and any attorney whose name shall at any time be stricken from the roll, by order of the court in the manner aforesaid, shall be considered as though his name had never been written thereon, until such time as the said justice in open court shall authorize him to sign or subscribe the same."

Now at common law for such misconduct as the petitioner was convicted of, the courts might proceed summarily to strike the attorney from the rolls even though the party injured did not complain. If the injured party complained of the wrong, it seems to have been customary to proceed by attachment. Doubtless the power existed to fine or imprison, or to administer both fine and imprisonment, or to add to these expulsion from the bar.

From the reported cases which I have seen, I infer, that the usage was to commit the attorney until restitution made ; but the courts were under no injunction of the law to proceed so far. They might impose a mere nominal fine or imprisonment for a trifling period, or they might probably dismiss the offender with a mere admonition, or the attachment might, we conceive, be denied in the first instance, the injured party being put to his action.

But by this statute an absolute duty is imposed to strike the name of the offending attorney from the roll, whenever the person aggrieved by his delinquency shall apply ; and

this, as it seems to me, is in the nature of a remedy for the private wrong, to enable the client thereby, so far as he may, to compel restitution. Doubtless the means has, in many cases, been found quite effectual to the end.

It may be objected that the proceeding authorized may fail to realize the client's demand; that it does not direct itself against the estate of the wrong-doer, like the process of *fi. fa.* most commonly in use with us; but neither did the attachment at common law in like cases, nor the writ of *capias ad satisfaciendum*. It may be further objected that the statute does not entitle the attorney to be reinstated upon restitution made, but the answer to this is, that the contempt, which is evidenced and established by the judgment of expulsion, still remains. It was evidently the purpose of the legislature to leave it in the discretion of the court to determine, upon consideration of the circumstances of each particular case, what should entitle the delinquent to restitution of his capacity and privilege, as I should infer it was supposed that this discretion might be safely reposed in, not to reinstate in any case until the private injury should be compensated, nor even then, if the offense should seem to demand further discipline.

The conclusive answer to all objections is, that the legislature has given to the injured party the right to have a particular judgment; its purpose, manifestly, was to enable him to redress his own injury, and not the public offense; else why should this severe sentence be exacted in every case without consideration of circumstances, and why, only, when the injured person invokes it?

The proceeding given by the statute is, therefore, a private remedy. The person aggrieved, to whom it is given, has a right in the judgment. He is entitled to have the offender excluded from the exercise of the function and privilege which he had before exercised, in accordance with the statute; that is to say, until *the court* reinstates him.

It remains to be seen whether the remedy so afforded is within the scope of pardon.

The pardoning power is conferred upon the executive of

this Territory in substantially the same words, as by the constitution, the same power is conferred upon the president. Organic Act, § 2; Const., art. 2, § 2.

The case of *Wells, ex parte*, 18 How. 307, seems to decide that this provision of the constitution was intended to confer the same power to be exercised in like manner, and in like cases, as exercised by the sovereigns of Great Britain.

The question whether it lies within the power of the executive to dispense with the judgment of expulsion from the bar, given under the statute before considered, depends, therefore, upon whether the pardoning power, as exercised by the English crown, extended to like cases, and the question must be resolved in the negative.

"The king cannot, by any dispensation, release, pardon, or grant whatsoever, bar any right, whether of entry or action, or any legal interest, benefit or advantage before vested in the subject. Hawk. P. C. Lib. 2, ch. 37, § 34; id., § 39; 17 Viner's Abr. 39, 40; 1 Salk. 383, 384.

The case of *Rex* v. *Davis*, 1 Bos. & Pul. 336, shows that the common-law process of attachment against the delinquent attorney in such case, although in form a proceeding for the contempt, is in effect but a civil execution, and read in connection with *Rex* v. *Myers*, 1 T. R. 265, and *Rex* v. *Stokes*, 1 Cowp. 136, seems to establish that the offender cannot be discharged of his imprisonment by the king's pardon.

In this view, the pardon which is pleaded has not the effect asserted for it, nor has the court a just power to restore the petitioner to the rolls, until it be shown that restitution has been made to the client of the moneys detained; for *Daniels* v. *Coper*, 4 McCord, 136, is authority to show that by proceeding by rule the client has waived his action at law, and if, therefore, the petitioner shall now be reinstated, he will have lost all remedy.

For the present, at least, therefore, the petition must be denied.

HALLETT, C. J. An attorney attached for failure to pay money to his client may purge himself by satisfying the

demand, but this statute is otherwise. By section 7 it is provided that the judgment of the court shall stand until the court shall authorize the attorney again to subscribe the roll, and I do not perceive that he may obtain such permission upon the payment of the money merely. His privilege as an attorney may be restored to him by the court in the exercise of a sound discretion, but he cannot demand it as a matter of right upon the payment of the money or the performance of any other condition. I think that the statute defines an act of professional delinquency which shall be regarded as sufficient cause for depriving an attorney of his privilege, and was not intended to give a remedy for the collection of money. *Garland's Case*, 4 Wall., which determines that a crime pardoned shall not be made a ground of exclusion, is not in point. In the case at bar there was no crime or offense against the criminal laws of the Territory committed, and, therefore, there is nothing upon which the pardon can take effect. The petitioner was adjudged to be deficient in probity of character, and it would be absurd to say that a pardon may supply a quality which is wanting. I concur in the judgment, but dissent from the opinion of the court.*

*Petition denied.*

---

* Afterward and on the 2d day of April, 1875, it appearing that the money had been paid, upon the recommendation of many members of the bar Mr. Browne was again enrolled as an attorney of the court.