## SUPREME COURT.

In the Matter of the Application of E., formerly an attorney.

*Attorney — Effect of conviction of felony on his right to act as such — Pardon by governor will not entitle him to restoration.*

A conviction of an attorney of felony forfeits his right to act as such. If stricken from the roll, a pardon by the governor will not entitle him to restoration. The court will, however, examine the proofs of alleged innocence in determining whether or not he ought to be restored. In the present case the court held the presumption arising from a conviction was not overcome, and refused restoration.

*Third Department, General Term, May,* 1879.

*Before* LEARNED, *P. J.,* BOARDMAN *and* TALCOTT, *JJ.*

LEARNED, *J.* — In September, 1878, this court made an order reciting that it had been informed that E. had been twice convicted of the crime of perjury and ordering the district attorney of Saratoga county to inquire into the matter and to serve proper affidavits on said E., setting forth the facts and any other material matters, and requiring said E. to show cause, at the next term, why he should not be disbarred.

At the next term in November, 1878, on notice to said E., the judgment-roll showing his second conviction, with the evidence and an affidavit of Mr. Moak, were presented to the court, and after hearing counsel on both sides, an order was made disbarring E. A writ of error had been brought by E. from the judgment against him on his conviction for perjury, and that writ was argued at that November term.

While the court was holding the matter under advisement, after the argument of that writ of error, the governor pardoned E. Subsequently the court affirmed the judgment and conviction, finding no error therein. E. now moves to have the order vacated which disbarred him, and be bases his motion on two grounds: 1. That he has been pardoned. 2. That he is innocent.

*In the Matter of Niles* (48 *How.*, 246), it was held that by convicting and sentence for a crime punishable in the state prison, the office of attorney and counselor was forfeited, that such forfeiture was like that of the forfeiture of any other public office and was not a temporary suspension. If this view is sound, and we are inclined to think that it is, then the conviction and sentence has worked a forfeiture to E. of the office of attorney and counselor, and the pardon does not reinstate him. In that view he stands very much as if he had held some such office as, for instance, that of county judge, his pardon would not have reinstated him in office. But that we may do him full justice, we will inquire next as to his innocence and fitness to be restored.

He is charged with misconduct in abstracting an affidavit in an action brought by himself as plaintiff and as attorney, against his brothers, was referred to a referee to take proof. He testified in his own behalf and produced an affidavit of his brother Alfred J. This affidavit was referred to in his testimony and was stated by him to be genuine, and was marked and attached to the referee's minutes as a part thereof. It was an important part of the evidence, and showed Alfred J. to admit the truth of the complaint.

On the trial of the indictment, Alfred J. denied having made this affidavit, and another witness explained the trick by which (as he said) it had been obtained. If that testimony was true it would be desirable that this affidavit should not be accessible. The evidence that E. removed it before filing the papers, is not contradicted. His excuse for this misconduct is that it was not his practice, nor that of older and experi-

enced lawyers, to file the evidence with a judgment-roll. The excuse is utterly frivolous, for he did file the evidence, his own testimony, and that of Isaac H. Johnson. The only thing which he took off was this affidavit, and the reason why that was removed are easily conjectured. It was a hazardous paper to leave in a public office. The absence of the paper was discovered and he was obliged to restore it.

But of more consequence is the charge of perjury, and to understand that fully some details must be given. The action above mentioned was brought to establish a will of E.'s father as a will lost after the decease of the testator. The allegation of the plaintiff E. was that it had been lost or destroyed by the negligence of Alfred J., his brother.

The alleged perjuries consisted in matters sworn to by him before the referee and principally in this, that he testified that Alfred J. told him that among their father's papers, of which Alfred J. took possession, was this will; that in moving some private papers he, Alfred J., had lost the will; that Alfred J. made the affidavit above referred to, which contains a statement that this will was among the papers.

It is undisputed that E. did so testify. The question is whether his testimony was untrue. On the trial it was shown to be untrue by the positive testimony of Alfred J. This was corroborated by the testimony of Andrew J. Freeman, who explained the manner in which E. obtained the affidavit in question by reading another affidavit to Alfred and substituting one for the other.

Alfred's testimony is further corroborated by the testimony of Jennie McCuen, who saw the testator read over and burn a paper which he said at the time was his will, drawn up by William Johnson. It is further corroborated by E.'s own letter to his father, the testator, a short time after this destruction, in which the writer refers to a letter from his father stating that he has burned his will. It is corroborated by the conduct of E., in hiding behind a coal bin under the stairs when

the officer was endeavoring to arrest him. The jury then were well justified in finding E. guilty.

We have now to examine what evidence he offers on this motion to show himself innocent.

First he presents his own affidavit in which he states that governor Robinson, on evidence presented to him, found him innocent. But as he does not state what that evidence was, we cannot tell whether the pardon was obtained from the sympathetic feelings of his excellency, or from his sound judgment. E. does not, however, in his own affidavit aver the truth of the testimony given on the trial or assert his own innocence.

Next we have the affidavit taken in Massachusetts of one Woosdell, stating that Alfred J. said to him that he had told E. that he had lost the will, and that at the request of E. he had made an affidavit to that effect.

Next we have the affidavit of Alfred J., which seems to be drawn with the object of saying as much as possible for E. without actually admitting his own perjury. He says that he knows E. is innocent; that his own testimony was given under a mistake; that from information which has come to him since the trial, he is satisfied that his evidence was given under a mistake; that E. was correct in all matters as alleged by him to have been stated or sworn to by deponent, &c.; that on mature consideration he knows E. is innocent. Now all this is mere trifling and quibbling. Alfred J. swore on the trial to plain and positive statements. He could not be mistaken about them, and no mature consideration was needed to enlighten his mind. What information could come to him since the trial, which could show a mistake in his testimony? Why does he not state what this information is? This is all probably evasive of the direct point in issue. He dares not say in plain language that his own testimony on the trial was false. But he pretends to mistakes and mature consideration. He knows now, and he must have known then, whether he found the will and whether he made the affidavit. If he is a repentent sinner, whose false testi-

mony convicted an innocent brother, he would say so. As it is his affidavit is utterly valueless to show E. to be innocent.

But Alfred J., while he makes no affidavit showing the falsity of his testimony, adds an unsworn letter to the court, in which he says he made the affidavit and lost the will and his brother is innocent.

It is hardly necessary to say that an unsworn paper is worthless to contradict the testimony of a witness given under oath. We have also a copy of a letter of the same kind written by Alfred J. to governor Robinson, which was forwarded to him. If this letter constituted the evidence on which the pardon was granted, it was utterly insufficient to warrant such an act. It is a letter purporting to be written in confidence and containing a special request that it should not be seen by the district attorney of Saratoga county, or his associate counsel, naming them.

The last affidavit is that of Andrew Freeman, who was a witness on the trial. Freeman states that his testimony was not all true ; that Alfred J. read and understood the same affidavit which he signed ; that the affiant had no conversation with E., in which E. said that he substituted another affidavit for the one read to Alfred.

Thus a careful examination of the papers show that E. does not swear to any facts showing his innocence ; that Alfred J. does not state positively that his own testimony was false, and that the only person who now contradicts plainly his former testimony is Freeman, who adds to this contradiction a very serious charge against public officers.

There still remains the evidence, undisputed, of Jennie McCuen, showing at least the probable burning up of the will by the testator himself ; of E.'s own letter to his father showing that he knew at the time of the burning of the will of E.'s removal of the affidavit from the minutes and report of the referee, a circumstance only to be accounted for by his consciousness that it had been obtained by a fraud, and finally his concealment of himself to avoid arrest for his crime.

Why should Alfred J. and Freeman be believed when they make affidavits out of court, rather than when they testify in open court and under the test of a cross-examination? If they testified falsely in court under the persuasion of persons whose names they do not divulge, is it not probable that they may testify falsely out of court under other persuasions? We consider the papers presented to be utterly insufficient to show the innocence of E.

If nothing more than these papers was presented to the governor when he granted the pardon, we must remember that it is his privilege to grant pardons of his own will and from his kind feeling towards distressed relatives even without any proof of the innocence of the prisoner. But the question presented to us is different. It is assuming for the present our right to restore E. Has he shown that he was innocent of the crime of which he was convicted? We have examined his papers carefully, as we had previously examined the evidence given on his trial, and we see no reason to doubt the correctness of the verdict which convicted him.

The motion must be denied.

An order will also be entered directing the clerk to send copies of the affidavits of Alfred J., and of Andrew Freeman, to the district attorney of Montgomery county, where they purport to have been taken and also to the district attorney of Saratoga county, and directing the district attorneys of those counties to examine these affidavits and the testimony given on the trial by the affiants, and to ascertain whether these affiants have not been guilty of perjury in the one instance or the other; and if they have been thus guilty then to take such proceedings for their indictment and conviction as the nature of the case requires.

The order to be entered and all the papers used on this motion to be filed in Saratoga county.