CASE 75.—PROCEEDINGS FOR THE DISBARMENT OF M. C.
NELSON AN ATTORNEY.—April 22.

# Nelson v. Commonwealth

Appeal from Livingston Circuit Court.

J. F. GORDON, Circuit Judge.

From a judgment of disbarment defendant appeals .
—Affirmed.

1. Attorney and Client—Disbarment—Grounds—Forgery.—Ky. St.
1903, section 97, providing that no person convicted of treason
or felony shall be permitted to practice as attorney, is simply
declaratory of the right already existing in the courts to disbar
an attorney who does not possess a character for honesty,
probity, and good demeanor, and the court has power, inde-
pendent of the statute, to disbar an attorney who has been
guilty of forgery, on the ground that the commission of the
offense shows that he is lacking in those qualities which are
necessary for him to possess in order to continue as an at-
torney.
2. Same — Evidence — Sufficiency. — Where an attorney pleaded
guilty to the offense of forgery, no other evidence was neces-
sary to show his unfitness as an attorney, and he might be
disbarred.
3. Pardon—Effect—Disbarment of Attorney.—A pardon of one
convicted of forgery does not prevent his disbarment as an
attorney for the offense.

M. C. NELSON, C. H. WILSON and G. W. LANDRAM for
appellant.

The law evidently relied upon by the court in the disbarment
proceedings is found in section 97 of the Kentucky Statutes, and
is as follows: "No person convicted of treason or felony shall be .
permitted to practice in any court as counsel or attorney at law."
We take it that the conviction in this case was the basis of the

Nelson v. Commonwealth.

disbarment proceedings, and that the efficacy of the pardon removed the same, and there was no conviction or judgment upon which to base said proceedings at the time same were had.

Again, under the Constitution the governor had the legal right to grant the pardon relied upon, and in our judgment, the release of the appellant "from all liability in consequence of said judgment of conviction" was no encroachment of the executive upon the judicial department of the government.

JAMES BREATHITT, Atty. Genl. and CHARLES H. MORRIS for the Commonwealth.

The appellant relied solely on his pardon for the offense of forgery. We think it unavoidable, and ask the court to affirm.

### AUTHORITIES CITED.

Ex parte Bum, 2 Crouch C. C., 379; Smith v. State, 1 Yerg, 228; Ex parte Wall, 107 U. S., 265; Underwood v. Commonwealth, 32 Ky. Law Rep., decided November 15, 1907; Penobscot Bar v. Kimball, 64 Me., 150; Rice v. Commonwealth, 18 B. Mon., 475; Com. v. Fugate, 2 Leigh (Va.), 724; Howe v. State, 2 Bay S. C., 565; U. S. v. Lancaster, 4 Wash. C. C., 64; Holliday v. People, 5 Gilman (Ill.), 214; U. S. v. Jones, 2 Wheeler's Cr. Case, 461; Eighmy v. The People, 78 N. Y., 330; Scott v. State, 6 Tex. Cw. App., 343.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

By a judgment of the Livingston circuit court entered on December 16, 1907, the appellant, M. C. Nelson, was disbarred from the practice of the law in all the courts of this Commonwealth. From that judgment, he prosecutes this appeal.

It appears from the record that appellant at the April term, 1907, of the Livingston circuit court, was indicted for the crime of forgery. At the December term of said court the case was called for trial. Appellant waived formal arraignment, and entered a plea of guilty. A jury was impaneled, and after hear-

ing the evidence and being instructed by the court, returned the following verdict: "We, the jury, fix the defendant's punishment at two years in the State penitentiary." During the same term appellant filed a pardon from the Governor of Kentucky. Excluding its formal provisions, the pardon is in words and figures as follows: "Now, know ye, that in consideration of the premises and by virtue of the power vested in me by the Constitution, I do hereby grant unto the said M. C. Nelson a full and free pardon for said offense, and do order that he be forthwith liberated from confinement, and released from all liability in consequence of said judgment of conviction, and I direct that all officers of this State respect this pardon." Upon the filing of the pardon the court ordered appellant released from custody. At the same time the court ruled Nelson to appear and show cause why he should not be disbarred as an attorney at law. At the hearing of the disbarment proceedings appellant introduced and refiled the pardon theretofore obtained. The trial court held that the pardon was no defense to the disbarment proceedings, and entered judgment accordingly. The record does not disclose what occurred at the hearing. It simply shows that appellant was made to appear, and upon his appearance tendered his pardon. The only error complained of is the failure of the court to adjudge that the pardon was a bar to the disbarment proceedings. We are therefore confined to a consideration of that question alone.

It is the contention of appellant that, by the terms of the pardon, he was released from all liability and consequences of the judgment of conviction; that section 97, Ky. St. 1903, provides that "no person convicted of treason or felony shall be permitted to

practice in any court as counsel or attorney at law;" that this statute creates a liability which is connected with the offense of which appellant was convicted; and that the pardon, therefore, released him from such liability. We must admit that there are very respectable authorities which support, or tend to support the position of appellant. Thus in the case of Penobscot Bar v. Kimball, 64 Me. 150, where an attorney was guilty of having forged a deposition and of having offered the same in court, and produced a pardon from the executive for the offense of forgery, the court held that the effect of the pardon was not only to release the attorney from the punishment prescribed for that offense and to prevent the penalties and disabilities consequent thereupon, but also to blot out the guilt thus incurred, so that in the eye of the law he was as innocent of that offense as if he had never committed it; that the pardon made a new man in respect to that particular offense, and gave him a new credit and capacity; that to exclude him from the office he held when he committed the offense would be to enforce a punishment for it notwithstanding the pardon. The court, however, upheld the disbarment proceedings upon the ground that the attorney had offered the forged deposition in court, and that this was a violation of his official oath, and another offense for which he had not been pardoned. In the case of Scott v. State, 6 Tex. Civ. App. 343, 25 S. W. 337, the court held that, under the statutes of Texas, a pardon for an offense was a complete bar to any disbarment proceedings on account of that offense. Likewise it has been held that the effect of a pardon, unless limited by its terms, is to restore to the offender personal rights and privileges forfeited by his conviction, and these include the privilege to follow his profes-

sional calling or means of livelihood. Thus, where by statute a conviction of felony worked a disqualification to sell liquors by retail, it was held that a pardon removed the disqualification. Hay v. Justices, 24 Q. B. D. 561. And, where by participation in rebellion against the federal government an attorney at law practicing in the federal courts became disqualified, it was held that by accepting a full pardon from the President, and taking the required oath of allegiance, he became entitled to resume practice. Exp. Law, 35 Ga. 285, Fed. Cas. No. 8, 126, U. S. Dist. Ct. So. Dist. of Ga.

On the contrary, it has been held that, while the general effect of a pardon as to the restoration of rights and privileges and the creating of a new credit and capacity may be conceded, the fact that a pardon has been granted to a person convicted of an offense cannot warrant the assertion that such a person is as honest, reliable, and fit to hold a public office as if he had constantly maintained the character of a law-abiding citizen. Hence it has been held that the fact that a person has been convicted of offenses disqualifying him to hold the position of a police officer is not altered or affected by the pardon, and he may still be held unfit for the office. 24 Am. & Eng. Encyc. of Law, p. 588; State v. Hawkins, 44 Ohio St. 117, 5 N. E. 228. In the Matter of E., Formerly an Attorney, 65 How. Prac. (N. Y.) 171, it appears that E. had been twice convicted of perjury, and had been warned to appear and show cause why he should not be disbarred. While the matter was pending the Governor pardoned E., who afterwards moved the court to vacate the order by which he had been disbarred, on the ground that he had been pardoned. The court, in passing upon this ground, said: "In the

Matter of Niles, 48 How. Prac. (N. Y.) 246, it was held that by conviction and sentence for a crime punishable in the State prison the office of an attorney and counselor was forfeited, that such forfeiture was like that of the forfeiture of any other public office, and was not a temporary suspension. If this view is sound, and we are inclined to think that it is, then the conviction and sentence had worked a forfeiture to E. of the office of attorney and counselor, and the pardon does not reinstate him. In that view he stands very much as if he had held some office, as for instance that of county judge. His pardon would not have reinstated him in office."

In Matter of ————, an Attorney, 86 N. Y. 563, where the attorney disbarred had been tried and convicted of forgery, the learned chief justice very ably discussed the question involved, and we quote from him at length as follows: "It is contended that the executive pardon of that offense has wholly blotted it out, and has given him new credit and capacity, and that in the eye of the law he is as innocent as if he had never committed the offense. Ex parte Garland, 4 Wall. (U. S.) 380, 18 L. Ed. 366; In re Deming, 10 Johns. (N. Y.)232, 483. Doubtless the effect of the pardon is that, so far as the violation of the criminal law, the offense against the public, is concerned, he is to be looked upon as innocent thereof. The pardon does reach the offense for which he was convicted, and does blot it out, so that he may not now be looked upon as guilty of it. But it cannot wipe out the act that he did, which was adjudged an offense. It was done, and will remain a fact for all time. Notwithstanding the extensive language used in Ex parte Garland, supra, and in Re Deming, supra, and that which we have used, there are limits to the effect of

such a pardon. 'The word "pardon" includes a remission of the offense, or of the penalties, forfeitures or sentences growing out of it.' Per Edmonds, J., People v. Potter, 1 Parker, Cr. R. (N. Y.) 51. The pardoned man is relieved from all the consequences which the law has annexed to the commission of the public offense of which he has been pardoned, and attains new credit and capacity, as if he had never committed that public offense. In re Deming, supra. Yet the pardon does very little toward removing the other consequences which result from the crime. Per Bronson, J., 5 Hill (N. Y.) 196, infra. It does not restore offices forfeited or property or interests vested in others in consequence of the conviction and judgment (Ex parte Garland supra; In re Deming, supra); and it has been said that it does not restore the capacity for civil office (Commonwealth v. Fugate, 2 Leigh [Va.] 724.) We do not at this time follow that case to that length. It cannot take away the right of an informer to his part of fine or penalty fixed by the law upon the commission of the offense (3 Inst. 238; State v. Rowe, 2 Bay [S. C] 565); nor the perfected right to a moiety of the penalty going to a custom house officer (U. S. v. Lancaster, 4 Wash. C. C. 64, Fed. Cas. No. 15,557), nor the costs of the prosecution (Holliday v. People, 5 Gilman [Ill.] 214; 2 Bay, supra; Ex parte McDonald, 2 Whart. [Pa.] 440; King v. Amery, 2 T. R. 515, 569). Judge Thompson, of the United States Supreme Court bench, charged a jury that, though a pardon restored the person to competency as a witness, it did not give back credibility to him, and that they should not believe a witness in that plight unless his testimony was corroborated. U. S. v. Jones, 2 Wheeler Cr. Cas. (N. Y.) 461, Fed. Cas. No. 15,493. And so Bronson, J., said in Baum

v. Clause, 5 Hill (N. Y.) 196: 'Pardon removes the
legal infamy of the crime, * * * but cannot * * *
wash out the moral stain.   * * *   The crime still
goes to the credit of the witness'—citing 1 Phil. on
Ev. 35; 1 Starkie on Ev. (1842 Ed.) 100.   See, also,
Eighmy v. People, 78 N. Y. 330.   The effect of a par-
don is to protect from punishment for the crime
committed, and for no other.   Case of Nicholas, Fos-
ter's Cr. Law, 64.   That case shows, too, that, though
the pardon would wipe out the offense against the
public of an act in one stage of progress or the effects
of it, it will not affect the public offense of the same
act in a further stage of its progress.   The act there
was giving poison.   The subject languished, but did
not die.   An act of Parliament was meanwhile passed
pardoning public offenses, with some exceptions
among which was murder.   Had the subject not died
from the poison, the act of Parliament would have
taken in the guilty man's case, and freed him from the
legal consequences of his act.   But after the passage
of the act, and within a year and a day, the subject
died from the poison, and then the giving of it was
murder.   It was held that the general pardon by the
act of Parliament did not relieve the felon from the
penalty of his act, though it did relieve him until the
death ensued.   Though it is held that one pardoned
for a larceny may maintain an action of slander
against him who says he is a thief, and that justifica-
tory proof of the thieving act is overcome by proof of
the pardon (Cuddington v. Wilkins, Hobart, 67, 81b),
yet it is said there that Wilkins might say that Cud-
dington had been a thief (Id. 81b).   It is also said in
the case in Hobart, supra, that it might well be that
a man, not knowing of the pardon, might justify ap-
prehending him for the felony because it was for the

advancement of justice. A justification thus made
would of necessity be on proof that would show the
criminal act and the former guilt of the pardoned man.
We have cited these instances to maintain by authority
our position that, though the pardon obliterates the
offense against the public the infraction of the crim-
inal law relieves the offender from the punishment
affixed to it by that law, washes him white from the
guilt that the criminal law saw in the act, and frees
him from the disabilities consequent upon the act as
a guilty act against the public, it does not annul the
act and relieve from all consequences of it; for a par-
don cannot take away the consequences of the act
where private justice is principally concerned. 4 Bl.
Com. 398.'' To the same effect is the case of In re
Davies, 93 Pa. 116, 39 Am. Rep. 729.

By the statutes in force in this State it is necessary
to procure from the county judge of the county of the
residence of the applicant a certificate to the effect
that the applicant is a person of honesty, probity, and
good moral character before obtaining a license to
practice law; and the license so obtained only author-
izes the person to whom it is granted to practice as an
attorney or counselor at law for and during good be-
haviour in said practice. In the recent case of Under-
wood v. Commonwealth, 105 S. W. 151, wherein the
county attorney of Barren county had been twice con-
victed of the offense of retailing intoxicating liquor in
violation of the local option law, and had also been
indicted for accepting a bribe to shield others from
prosecution, this court held that he was properly dis-
barred from the practice of the law, and, in discus-
sing the case, said: ''The charge of bribery may be
laid out of the case. It was denied. There was no
evidence. A mere indictment is not enough to justify

disbarment of an attorney. He must be at least guilty of the offense charged in the indictment, and, while neither indictment nor conviction of the offense is essential as a prerequisite to the proceedings to disbar an attorney (Baker v. Commonwealth, 10 Bush, 592), guilt of some act which shows him to be unfit, or no longer entitled to confidence, must be established. To be admitted to the bar a person must not only be learned in the law, but possess a character of honesty, probity, and good demeanor. A certificate of such character, furnished by the county court of his residence, is a prerequisite to the granting of the license. It is the possession of the character described that entitled him to admission to the bar, allowing that he is able to pass the requisite examination touching his learning. The continued possession of character is as essential to maintain his relation as an attorney at law as it is to have it in the first instance to be admitted. The office is one peculiarly of confidence. Not only do his clients repose trust in his integrity, but, as an officer of the court in the matter of administering justice, his privileges and duties are such as to constantly call for the exercise of fidelity, both to his client and to the State. A lawyer without good character is not only a reproach to his profession, but he brings into public distrust, and is a very menace to, the administration of justice itself. All courts have as an incident to the power to admit attorneys to their bar the power to disbar them for such conduct as shows they are not longer worthy of confidence. It is not necessary that the misconduct should be such as would render him liable to criminal prosecution. If it shows that he is unfit to discharge the duties of his office, is unworthy of confidence, even though the conduct is outside of his professional dealings, it is

sufficient. If he is not honest, if he is not moral, if he is not of good demeanor, he may be disbarred, and should be. His office is a very badge of respectability, a patent of trustworthiness, derived from his position on the court's roll of counsel. He ought not to be suffered to pass for what he is not." Thus it will be seen that, while the Kentucky statute provides that no person convicted of treason or felony shall be permitted to practice law, this statute is simply confirmatory of the right and power already existing in the courts to disbar an attorney who does not possess a character for honesty, probity, and good demeanor. We think a careful analysis of those decisions holding that an attorney cannot be disbarred for an offense for which he has been pardoned shows that the rule is confined to those cases where disbarment is a part of the penalty for the offense, and the courts have no inherent power to disbar except for a conviction of the offense. In this State, however, the courts have the power, independently of the statute above referred to, to disbar an attorney who has been guilty of forgery upon the ground that the commission of the offense shows that he is lacking in those qualities which are necessary for him to possess in order to continue as an attorney at law. As is well said in the case last cited, "neither indictment nor conviction of the offense is essential as a prerequisite to the proceedings to disbar an attorney;" but "guilt of some act which shows him to be unfit, or no longer entitled to confidence, must be established." In this case appellant pleaded guilty. This plea was made in the presence of the court. No other evidence was necessary to show his moral unfitness. While the effect of the pardon was to relieve him of the penal consequences of his act, it could not restore his character. It did not

reinvest him with those qualities which are absolutely essential for an attorney at law to possess.  It could not rehabilitate him in the trust and confidence of the court.  Lawyers are officers of the court.  They are agents through whom justice must be administered. They should always be worthy instruments of justice. Courts should never hesitate to disbar those who are morally unfit to act as such agents.

For the reasons given, the judgment is affirmed.