32260. SCOTT *v*. LEATHERS, Solicitor-General.

Decided February 25, 1949.

*F. L. Breen,* for plaintiff.

MacIntyre, P. J. ■ "An attorney must be removed by the superior court of the county of his residence for the following causes: 1. Upon his being convicted of any crime or misdemeanor involving moral turpitude. In either case the record of his conviction is conclusive evidence. 2. When any judgment or rule absolute has been rendered against him for money collected by him as an attorney, which he fails to pay within 10 days after the time appointed in the order, in which case the record of the judgment is conclusive evidence, unless obtained without any service under some law authorizing such a proceeding. 3. Upon it being shown to the satisfaction of the court that he has been guilty of any deceit or wilful misconduct in his profession. 4. For want of a sound mind, or for indecent behavior in or out of the courthouse, whereby he becomes a nuisance to the court, his brother members of the bar, or the public." Code, § 9-501. "When an attorney at law is thus removed, after the lapse of 12 months (unless removed because of his having been convicted

of a crime or misdemeanor involving moral turpitude) it is in order for him to be restored upon the application of two-thirds of the members of the bar of the county where he was removed, and of those who usually practice in the superior court of said county, if approved by the judge of the circuit." Code, § 9-519.

The trial court was evidently of the opinion that an attorney who has been convicted of a crime or misdemeanor is *forever* barred from the practice of law in this State by virtue of the provisions of Code § 9-519. Considered alone this Code section might seem to exclude an attorney from the practice of law *forever* where he has been convicted of a crime involving moral turpitude. Was this really the intention of the statute? "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it, and are, therefore, to be construed in connection and in harmony with the existing law, and as part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the court." *Botts* v. *Southeastern Pipe-Line Co.*, 190 *Ga.* 689 (10 S. E. 2d, 375). At the time this section, with reference to reinstatement of attorneys, first appeared among the statutes of this State (Code of 1861, § 393), the executive had, under constitutional authority, the power to grant pardons. Constitution of 1865, art. III, sec. 2, par. 2. This power of pardon conferred by the Constitution was not subject to legislative control. It was not, therefore, within the constitutional power of the legislature to inflict punishment beyond the reach of executive clemency. "Without such a power of clemency, to be exercised by some department or functionary of a government it would be most imperfect and deficient in its political morality, and in the attributes of Deity, whose judgments are always tempered with mercy." Ex parte Wells, 59 U. S. 307 (15 L. ed. 421). "A pardon restores one to full rights of citizenship (Code, § 89-101 [and Code, § 2-801]), including the right to hold public office and operates to remove all blot and stain growing out of a previous conviction of felony involving moral turpitude, [but] it does not operate to confer or restore a public office which was previously held, but which on account of the previous conviction

and sentence was necessarily relinquished." *Morris* v. *Harts-field,* 186 *Ga.* 171, 174 (197 S. E. 251). We think, therefore, that the provisions of Code § 9-519 are not to be construed as limiting the court's right to restore to practice an attorney who has been convicted of a crime involving moral turpitude and disbarred, where such attorney has been granted a full pardon. The statutes do not limit the general powers of the courts over attorneys, and this inherent power may not be defeated by the legislative or executive departments although its exercise may be regulated by statute. *Payne* v. *State,* 52 *Ga. App.* 425 (183 S. E. 638). Thus, if the legislature, within its power to do so, had ordered and had really intended that an attorney who has been convicted of a crime involving moral turpitude shall be forever barred from the practice of law in the courts of this State, it would have been encumbent upon the courts to prohibit such an attorney from practice. However, it is well established under our system of government that the executive, the legislative, and the judiciary departments may not encroach one upon the other's prerogatives, and just as the legislative may not by statute defeat the constitutional power of the executive to dispense clemency, neither the legislative nor the executive may defeat the judiciary's inherent power over attorneys at law. A disbarred attorney may not automatically be reinstated either by a special act of the legislature (In re Thatcher, 22 Ohio Dec. 116, 48 A. L. R. 1243), or an executive pardon (*Payne* v. *State,* 52 *Ga. App.* 425, 183 S. E. 638). These are factors, however, which the court, in the exercise of its discretion may take into consideration upon an application for reinstatement of a disbarred attorney. Where an attorney at law has been disbarred for any of the reasons stated in Code § 9-501 (except subsection 1 thereof) after the lapse of 12 months it is in order for him to be restored upon the application of two-thirds of the members of the bar of the county where he was removed, and of those who usually practice in the superior court of that county, *if approved by the judge of the circuit.* An attorney who has been disbarred for the reason stated in subsection 1 of Code § 9-501 (conviction of a crime or misdemeanor involving moral turpitude) is eligible to apply for reinstatement under the same terms as if he had been removed for any of the causes stated in subsections 2, 3, 4, of such section, where a full pardon had been granted him.

In the instant case the court must assume that whatever was done under the judgment of disbarment was rightly done and that the conduct for which Mr. Scott was found guilty was such as rendered him an unfit person to be at the bar. While generally every court should temper justice with mercy, it may do so only within the limits of its power and must not out of a sense of sympathy and forgiveness be led into a usurpation of the law which they are enjoined to enforce, still we can not but feel that both on principle and precedent sentences of disbarment and exclusion need not be exclusions *forever* and if and when the court finds that Mr. Scott, who has suffered ten years and five months exclusion, and that the sentence however right has had the salutary effect of awakening in.him a higher sense of honor and duty, the court should not be inexorable,, yet the court ought not to look at the application for reinstatement with respect to the punishment of the individual himself, the court has a duty to perform to parties ligitant, the public, and the profession of the law to see that persons applying for reinstatement to the bar are persons in whose integrity and honor reliance may be placed, and if the court is satisfied that the conduct of a man has been such as to inspire confidence in his character the court may reinstate him. Ex parte Pyke 122 Eng. Rep. 1354, but " 'the attorney seeking reinstatement has the burden of satisfying the court of his fitness to be restored to so honorable a fellowship.' In re Kaufman [245 N. Y. 423, 157 N. E. 730]." *Payne* v. *State,* supra. Therefore, if Mr. Scott will satisfy the court by the testimony of trustworthy persons, as provided by law, that in whatever business he has been engaged since his disbarment, his conduct has been unimpeached and is unimpeachable, the court may grant his application for reinstatement.

As we have said, the court was evidently, judging from his order refusing the application, under the impression and of the opinion that since the applicant had been disbarred by virtue of having been convicted of a crime involving moral turpitude he was forever barred from reinstatement, and the court did not, therefore, exercise his discretion to determine the applicant's fitness for re-admission. When it clearly appears from the actual language of the order that the judge failed to exercise any discretion whatever, and that his refusal of [the application] was

based entirely upon an erroneous construction of the law that as a matter of law he could not grant the application such judgment was erroneous. *Marion County* v. *McCorkle*, 187 *Ga.* 312 (200 S. E. 285).

■ The solicitor-general objected to the grant of the application upon the ground that the application was barred by the statute of limitations since it had not been brought within three years from the date of the judgment of disbarment. We do not understand such to be the law. A judgment of disbarment is a final judgment, subject to all statutes and rules touching that subject, it is true, and in *In re Bradley*, 64 *Ga.* 536, where an attorney sought to set aside a judgment of disbarment for defects appearing upon the face of the record of the disbarment proceedings, it was held that under the Acts of 1876, p. 100 (Code, § 3-702) the motion had to be made within the statutory period of three years. However, a judgment of disbarment is not such a final and conclusive judgment that, in the absence of statutory prohibition, an attorney may not, under proper circumstances, apply for reinstatement to the practice of law. The petitioner in the instant case does not attack the disbarment proceedings themselves as defective, erroneous, or illegal. He seeks reinstatement.

The court erred, therefore, in dismissing the petition for reinstatement.

*Judgment reversed. Gardner and Townsend, JJ., concur.*