IN THE MATTER OF PETITION FOR REINSTATEMENT OF
GEORGE T. BECK, JR.

[No. 675S157. Filed February 3, 1976.]

PER CURIAM—The petition for the reinstatement of George T. Beck, Jr., having been filed on June 25, 1975, was referred to the Disciplinary Commission of this Court and said petitioner was afforded the opportunity of a hearing before the full Disciplinary Commission; said hearing was reported and held on September 12, 1975. The record of that hearing was filed in this Court on November 25, 1975, together with Exhibits and forms the basis for the "Findings and Recommendations of the Disciplinary Commission" which were signed by each member of that commission and filed on the same date. Those "Findings and Recommendations of the Disciplinary Commission" are as follows:

## FINDINGS AND RECOMMENDATIONS OF THE DISCIPLINARY COMMISSION

The Petition for Reinstatement of George T. Beck, Jr., having been filed on June 25, 1975, a hearing was held September 12, 1975, pursuant to Admission and Discipline Rule 23, Section 4.

Present were Rudolph V. Dawson, Chairman; Judge Paul H. Buchanan, Jr.; Lewis C. Bose; Ronald R. Fifer; Robert Y. Keegan; and Judge Wesley W. Ratliff, Jr.

The Commission was represented by Richard H. Grabham, its Executive Secretary. The Petitioner, George T. Beck, Jr., was present and was represented by Mr. Claude Bates, attorney, Evansville, Indiana.

Testimony of Mr. Beck was received as well as Petitioner's Exhibits 1 through 20 consisting of letters and/or affidavits of attorneys recommending Mr. Beck be reinstated.

The Commission presented two exhibits: one consisting of an attorney's letter recommending Mr. Beck be reinstated and one from a layman opposing his reinstatement.

## FINDINGS

(1) George T. Beck, Jr., was admitted to the practice of law in the State of Indiana in 1951. On April 16, 1965, he tendered his resignation from the roll of attorneys of the State of Indiana. On May 6, 1965, the Supreme Court accepted the resignation and ordered that his name be stricken from the roll of attorneys of this Court and State. (Petition for Reinstatement)

(2) On January 22, 1965, George T. Beck, Jr., was convicted in the Criminal Court, Palm Beach County, Forida, of the offense of Robbery and sentenced to ten years in the State Prison. (Petition for Reinstatement)

(3) On March 21, 1973, the officials of the State of Florida acting on recommendation of the Florida Parole and Probation Commission, granted restoration of George T. Beck, Jr's., civil rights. (Petition for Reinstatement)

(4) On December 11, 1974, the officials of the State of Florida acting on recommendation of the Florida Parole and Probation Commission, granted George T. Beck, Jr., a full Pardon in connection with the conviction in (2) *supra*. (Petition for Reinstatement)

(5) Petitioner practiced law in the City of Evansville from 1951 until 1962. In 1962 he moved to Florida, although he continued law practice on an occasional basis until his arrest in May, 1964. (TR. p. 9, p. 13, p. 20)

(6) Petitioner does not intend to return to Indiana (TR. p. 18) but does want to practice law "in some sense". (TR. p. 42)

(7) Petitioner has a history of promotional activities and candidly admits this is his primary interest. (TR. pp. 20-33)

(8) Petitioner claims he was innocent of the crime for which he was convicted, although he was convicted by a jury and appealed his conviction to the Supreme Court of Florida (TR. pp. 33-41). The conviction was affirmed.

In addition to the above findings, the Commission sets out below specific findings as required by Section 4, Admission and Discipline Rule 23:

(a) The Disciplinary Commission cannot find Petitioner desires in good faith to obtain restoration of his privilege to practice law.

The Commission finds that upon Application for Admission Upon Examination to Practice Law as well as on Application for Admission on Foreign License, this Court through the Board of Law Examiners requires compliance with Admission and Discipline Rule 21 set out below:

"Applicants who successfully completed the examination hereinbefore provided for and are eligible for admission under the foregoing rules may be admitted by appearing in person before the bar of this court, after having established to the satisfaction of the court that applicant is (1) a bona fide resident of the state of Indiana or (2) is intending to engage, as a vocation, in the practice of law in the state of Indiana and will enter thereon within two (2) years after his admission, excluding any period of service in the armed forces of the United States.

Applicants who are applying for admission upon foreign license and who are eligible for admission under the foregoing rules may be admitted by appearing before the bar of this court, after having established to the satisfaction of the court that applicant is (1) a bona fide resident of the state of Indiana or (2) will comply with the requirements in lieu of residence declared in his affidavit provided for by rule 6 (9) hereof. (As amended October 27, 1971.)"

Admission and Discipline Rule 6(9) referred to in Rule 21 is set out below:

"Provided, however, if the rules of the jurisdiction from which applicant seeks admission, as of the date of his application, woud permit a resident of Indiana, otherwise qualified, to be admitted to practice law therein upon his Indiana license without the requirement of residence, the applicant shall not be required to be a resident voter of the state of Indiana at the time of application, as provided by numerical paragraph (1) of this rule, provided he shall file, with his application, an affidavit that he intends, within two (2) years from the date of his application, and in lieu of fulfilling said requirement of residence, to engage regularly in the practice of law within the state of Indiana and that he will, while so engaging in the practice of law within this state either (a) maintain an office for such purpose within this state, (b) actively affiliate with one or more lawyers who are duly admitted to practice law in this state and who shall maintain an office herein for the active practice of law, or (c) be employed full-time, as a lawyer, in the service of the United States of America, the state of Indiana or a county or municipality of the state of Indiana. In no event shall such applicant be admitted to practice in this state upon the filing of the aforesaid affidavit in lieu of residence until he shall have established, to the satisfaction of the board and the court, that he will comply with the intentions declared in said affidavit. It is intended that this provision for admission without the requirement of residence shall apply reciprocally, and it will be extended only to applicants from such jurisdictions as shall accord the same or substantially the same privilege of admission to persons duly admitted to practice in this state; (As amended January 8, 1970; as amended October 27, 1971; as amended January 24, 1972.)"

The Commission recommends that prior to reinstatement, Petitioner should be subject to the same requirement for admission. Petitioner's testimony reflects it is not his intent

to practice law in the State of Indiana, be employed full time, as a lawyer, in the service of the United States of America, the State of Indiana or a county or municipality of the State of Indiana.

(b) The Commission finds the term of suspension (five years) has elapsed since the suspension (resignation).

(c) The Commission finds the Petitioner has not practiced law in this State or attempted to do so since he was disciplined.

(d) The Commission finds Petitioner has complied fully with the terms of the orders for discipline.

(e) The Commission finds Petitioner's attitude towards the misconduct for which he was disciplined is one of genuine remorse.

(f) The Commission finds Petitioner's conduct since the discipline was imposed has been exemplary and above reproach.

(g) The Commission cannot find that the Petitioner has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself in conformity with such standards for the reasons set out in (a) above and (h) below.

(h) The Commission finds that Petitioner cannot safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the Bar and as an officer of the Courts because:

(1) His record reflects a history of promotional activities to which his former practice of law was incidental. His testimony reflects his intent to continue in this direction. Such ventures involve a business where a professional license could be improperly used and would appear unnecessary to his livelihood.

(2) The Commission believes that Petitioner's conviction of the crime of Robbery seriously affects his fitness to practice law. The Commission finds that the majority of court opinions hold that a Pardon, while wiping out the guilt associated with the crime and returning the offender's civil rights, does not close "the judicial eye" to the attorney's moral character which led to the incident, or the fact that the crime occurred.

*In Re Levine,* 2 Cal. 2d 324, 32, 41 P. 2d 160 (1935) contains a general statement:

> The mere presentation of a pardon, without more, by an applicant, situated as is petitioner here, does not, in our opinion, satisfy the burden resting on him of showing that he possesses that moral stamina essential to one qualified to engage in the practice of the law, for it has been held that while a pardon obliterates an offense to such an extent that for all legal purposes the one-time offender is to be relieved in the future from all its results, it does not obliterate the act itself. It puts the offender in the same position as though what he had done never had been unlawful, but it does not close the judicial eye to the fact that once he had done an act which constituted the offense. U. S. v. Swife (D.C.) 186 F. 1002, 1016; People v. Weeber, 26 Colo. 229, 57 P. 1079, 1080. In other words, while the effect of a pardon is to relieve the offender of the penal consequences of his act, it does not restore his character and cannot reinvest a person with those qualities which are absolutely essential for an attorney at law to possess or rehabilitate him in the trust and confidence of the court. Nelson v. Commonwealth, 128 Ky. 779, 109 S.W. 337, 338-340, 16 L.R.A. (N.S.) 272. The very essence of a pardon is forgiveness or remission of penalty. State v. Hazzard, 139 Wash. 487, 247 P. 957, 47 A.L.R. 538. It implies guilt, and does not wash out the moral stain. Nelson v. Commonwealth, supra.

Numerous cases make the same point. *Ex parte Stephenson,* (1939) 237 Ala. 488, 187 So. 461; *Re Stephenson,* (1942) 243 Ala. 342, 10 So.2d 1, 143 A.L.R. 166; *Cohen* v. *Wright,* (1863) 22 Cal. 293 (dictum); *Re Riccardi,* (1923) 64 Cal. App. 791, 222 P. 625; *Ex Parte Browne,* (1875) 2 Colo. 553; *Branch* v. *State,* (1935) 120 Fla. 666, 163 So. 48; *Payne* v. *State,* (1936)

52 Ga. App. 425, 183 S.E. 638; *Com. ex rel. Harris* v. *Porter*, (1935) 257 Ky. 563, 78 S.W.2d 800; *State* v. *Gowland*, (1932) 174 La. 351, 140 So. 500; *State* v. *Gowland*, (1938) 189 La. 80, 179 So. 41; *Re Nitsberg*, (1936) 248 App. Div. 232, 285 N.Y.S. 334; *Re Finn*, (1939) 256 App. Div. 288, 10 N.Y.S.2d 29; *Re E*, (1879) 65 How. Pr. 171; *Re Egan*, (1928) 52 S.D. 394, 218 N.W. 1; *Ex parte Hunter*, (1867) 2 W. Va. 122, *Ex parte Quarrier*, (1870) 4 W. Va. 210; *Re Garbett*, (1856) 18 C.B. 403; 139 Eng. Reprint 1425; *Hankamer* v. *Templin*, (1945) 143 Tex. 572, 187 S.W.2d 549; *Payne* v. *State*, (1936) 52 Ga. App. 425, 183 S.E. 638; *Scott* v. *Leathers*, (1949) 78 Ga. App. 661, 52 S.E.2d 40.

Courts seem to uniformly hold that a pardon does not nullify the disbarment. A split of authority exists, however, on the question of whether the pardon compels the reinstatement of the attorney. The overwhelming majority of cases indicates the position taken in *Levine, supra.*, that the pardon alone has no effect at all on the disbarment. The single major case holding that the pardon mandated a reopening of the disbarment proceeding is *In Re Kaufmann*, (1927) 245 N.Y. 423, 157 N.E. 730.

The United States Supreme Court case often cited as authority for automatically reinstating a pardoned lawyer is *Ex parte Garbard*, (1867) 4 Wall 333, 18 L.Ed. 366. That case dealt with requiring an attorney who participated in the Civil War on the side of the Confederacy to take an oath later declared unconstitutional. This case has been distinguished from almost every disbarment/pardon case decided since, including those cited, *supra*.

Concerning the argument that the disbarment is a punishment which has been rescinded by the clemency of the pardon, *Branch* v. *State*, (1935) 120 Fla. 66, 163 So. 48 counters along the lines most cases seem to follow:

> The disbarment of a practicing attorney is not a part of the punishment inflicted for the commission of crime, but it is the withdrawing from him of an acquired right because

of misconduct on his part which has been made to appear to a court of competent jurisdiction investigating that particular matter with a vow to determining the propriety of such person continuing in the practice of law. He does not forfeit his right to practice law because of the conviction, but because of the adjudication that he had been guilty of conduct which shows him to be a person unfit to engage in the profession of practicing law. The pardon wiping out the conviction of the criminal offense will no more reinstate the attorney who has been disbarred (not because of conviction, but because of the commission of a particular act) than would the refusal to grant the pardon preclude such person upon a proper showing from being reinstated in the practice of law.

No recent Indiana cases were found that either support or detract from the majority position.

(3) Petitioner has been out of the practice of law for more than ten years. His testimony concerning his knowledge of the Canons of Professional Responsibility was not convincing.

## RECOMMENDATION

The Disciplinary Commission recommends that the Petition of George T. Beck, Jr., for Reinstatement to practice law before this Court be denied.

The transcript of the hearing will reflect that at the close of the hearing the parties agreed that an attempt would be made to determine what reasons or recommendations were made by the Florida Board of Parole and Probation recommending restoration of Mr. Beck's civil rights and recommending his Pardon. A copy of the letter dated September 25, 1975, from Kenneth W. Simmons, Assistant Director, Florida Parole and Probation Commission to the Executive Secretary of the Disciplinary Commission is attached as Exhibit A to these findings. A copy of this letter was furnished Petitioner's attorney on October 6, 1975. This letter was considered by the Commission to have no bearing on its recommendation and was considered in the most favorable light in behalf of the Petitioner.

Respectfully submitted,

Ronald R. Fifer       Rudolph V. Dawson
Robert Y. Keegan    Lewis C. Bose
Wesley W. Ratliff, Jr.   Paul H. Buchanan, Jr.

FLORIDA PAROLE AND PROBATION COMMISSION
P. O. Box 3168    1117 Thomasville Road
Tallahassee, Florida 32303

September 25, 1975

Mr. Richard H. Grabham
Executive Secretary
Disciplinary Commission of the Supreme Court
150 West Market Street
Room 814
Indianapolis, Indiana 46204

RE: George T. Beck, Jr.
CO# 100399
YOUR: 675S157

Dear Mr. Grabham:

Mrs. Alice Ragsdale, Secretary of the Board of Pardons, has referred your letter of September 15, 1975, to this office for reply.

In answer to your specific questions:

1. There is no assertion in Mr. Beck's application for clemency indicating that he maintained his innocence of the crime for which he was convicted. A copy of his application is attached hereto. During the investigation conducted by this agency, however, Mr. Beck steadfastly claimed innocence of this offense.

2. The action of the Board of Pardons in granting Mr. Beck a restoration of civil rights and, later, a full pardon, was not in any degree based upon his claim of innocence. When submitting a confidential case analysis to the Pardon Board, this agency does not present the applicant's claim of guilt or innocence of the offense. This Commission's recommendations are based on factors of his personal life and his adjustment since conviction.

Our file indicates that, when he was interviewed during a presentence investigation, he indicated to our investigator that he was innocent of the offense. At the time of his admission to the Florida Prison System, he also maintained a claim of innocence.

EXHIBIT "A"

Mr. Grabham

Mr. Beck was under parole supervision by this agency from October 7, 1969, to October 7, 1972. During that time he responded very favorably under supervision, including stable employment and permanent residence, and enjoyed a good reputation in the community. This Commission felt he had demonstrated good faith in assuming the role of a responsible and contributing citizen. On the basis of this analysis, he was recommended to the Pardon Board for a restoration of civil rights at the time his parole terminated.

I trust this sufficiently answers the questions posed by your letter.

Very truly yours,
Kenneth W. Simmons
Assistant Director

JS/alc

Attachment

State of Florida

APPLICATION FOR CLEMENCY
Full Pardon
(Must be filed in duplicate)
(Attach separate pages if necessary)

The undersigned here applies for clemency because of criminal conviction and in support thereof, would show:

1. Name of applicant: George Thomas Beck, Jr.
2. Age 49, Date of Birth Jan. 3, 1924, Color White, Sex Male
3. Convicted of Robbery
   Date convicted: 1/22/65, Court: Criminal Court of Record, County: Palm Beach
4. Sentence: Sentenced to serve ten (10) years
5. Date completed sentence, probation, parole: Completed parole October 7, 1972
   Date of Sentence: Jan. 22/65
6. Name of Trial Judge: Russell H. McIntosh
7. Name of prosecuting attorney: Original—Marvin U. Mounts; Present—David Bludwort
8. Applicant's present address: 4888 32nd Drive South, Lake Worth, Florida
   Length of Florida residency: 13 years
9. This application is (is not) to be argued before the Board of Pardons. The name of the person who will argue it is

Thomas A. Burford, Esquire, Attorney
His address: P. O. Box 2260, 712 Citizens Building, West Palm Beach, Florida

10. Applicant believes he is entitled to consideration by the Board of Pardons because: Applicant has an exemplary conduct record prior to and subsequent to the conviction involved and has demonstrated an ability to retain a useful status in society.

11. Applicant's reason for requesting consideration by the Board of Pardons: Applicant wishes to obtain reinstatement to legal bar which is permanently blocked by the conviction involved.

12. ATTACHED HERETO ARE:

(x) Certified copy of charging instrument (indictment, information or affidavit) upon which tried and certified copy of judgment and sentence.

(x) Affidavit notarized showing copies of application mailed to Judge and Prosecuting Attorney.

Sworn to and subscribed before me this
14th day of August, 1973

George Thomas Beck, Jr.
*Applicant*

Ruth Ann Harmon
*Notary Public*

Notary Public, State of Florida at Large. My Commission Expires Oct. 25, 1976. Bonded by American Fire & Casualty Co.

NOTE: Applicant was granted restoration of civil rights by the Board on March 21, 1973.

This Court has carefully considered the foregoing findings of its Disciplinary Commission which were unanimous and finds the same to be true and correct with respect to each factual determination and, therefore, adopts as its own findings the "Findings and Recommendations of the Disciplinary Commission" as filed on November 25, 1975, except the Court does not agree with that part of the findings that there is a requirement in the Rules of this Court that a disbarred lawyer establish as a condition of reinstatement that he is a resident of Indiana or that he intends to practice law in Indiana. Denial of reinstatement on this ground is therefore erroneous.

This Court further denies the "Petition for Reinstatement" filed on June 25, 1975 by George Thomas Beck, Jr.

## JUDGMENT ACCORDINGLY

Givan, C.J., Arterburn, J., Hunter, J., and Prentice, J., concur in denying the Petition for Reinstatement.

DeBruler, J., dissents with the following opinion.

I agree that the pardon in Florida does not compel reinstatement. However, that pardon does signify that the penal interest of the State of Florida is fully satisfied and should serve in this case to preclude this Court and our Commission from denying reinstatement, under Admission and Discipline Rule 23, Section 4: Reinstatement, Paragraphs (g) and (h), simply because the petitioner was convicted for the crime of robbery. When disbarment has resulted from a conviction for a criminal offense, this Court's interest in keeping the person disbarred solely because of that conviction is at an end when five years have elapsed from the date of disbarment *and* the penal interest of the State of Indiana has been fully satisfied. In Finding (h) (2), the Commission stated: "The Commission believes that Petitioner's conviction of the crime of Robbery seriously affects his fitness to practice law." When this finding is juxtaposed with Finding (f), that "The Commission finds Petitioner's conduct since the discipline imposed has been exemplary and above reproach," it is apparent to me that the continued disqualification of petitioner is based solely upon the 1965 conviction and, therefore, stands unjustified.

I would request the Commission to rehear this case and give effect to the views expressed in this opinion.

NOTE.—Reported at 342 N.E.2d 611.