In the Matter of S. WALTER KAUFMANN, an Attorney, Respondent.

First Department, July 6, 1925.

**Attorney and client — reinstatement under Judiciary Law, § 88, subd. 4 — petitioner was convicted in Federal court of criminal conspiracy under United States Criminal Code, § 37 — punishment prescribed is fine or imprisonment for not more than two years, or both — conviction was affirmed — sentence was commuted and finally pardon was granted — fact of pardon does not require Appellate Division to reinstate attorney — petitioner was convicted of conspiring to conceal from Alien Property Custodian money of German government during World War — in view of crime reinstatement is denied.**

An attorney at law, who was disbarred following his conviction of criminal conspiracy under section 37 of the United States Criminal Code, a crime punishable by a fine or by imprisonment for not more than two years, or both, which conviction was affirmed, is denied reinstatement under subdivision 4 of section 88 of the Judiciary Law, notwithstanding his sentence for that crime was commuted, and that he was later given a full pardon by the President of the United States.

The fact that the petitioner received a pardon from the President does not compel the Appellate Division to reinstate him, and in view of the fact that the crime for which he was convicted was based on a conspiracy to conceal from the Alien Property Custodian money belonging to the Imperial German Government at a time when that government was an alien enemy, the Appellate Division denies reinstatement.

MOTION by petitioner for reinstatement as an attorney and counselor at law.

*William D. Guthrie* [*Abraham Tulin* with him on the brief], for the petitioner.

*Einar Chrystie*, for the Association of the Bar of the City of New York joining in the application by direction of the executive committee thereof.

CLARKE, P. J.:

The petitioner was admitted to practice as an attorney and counselor at law at the October, 1905, term of the Appellate Division, First Department.

On the 18th day of December, 1920, the petitioner was convicted, after a trial in the United States District Court for the Southern District of New York, on indictment in said court for conspiracy with others to " defraud the United States by obstructing, impeding, hindering and delaying the United States in, and preventing the United States from seizing, capturing, receiving, holding, administering, assuming the control of and title to certain indebtedness of one Edward A. Rumely to the Imperial German

Government, an enemy of the United States," the United States being then at war with the Imperial German Government, under section 37 of the United States Criminal Code (35 U. S. Stat. at Large, 1096) which provides as follows: " If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both."

Upon such conviction and on the 20th of December, 1920, the petitioner was sentenced to serve a term of one year and one day in the United States penitentiary, Atlanta, Ga. Section 355 of the United States Criminal Code (35 U. S. Stat. at Large, 1152) provides: " All offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies."

Section 477 of the Judiciary Law provides that " Any person being an attorney and counsellor-at-law, who shall be convicted of a felony, shall, upon such conviction, cease to be an attorney and counsellor-at-law, or to be competent to practice law as such."

Subdivision 3 of section 88 of the Judiciary Law provides that " Whenever any attorney and counsellor-at-law shall be convicted of a felony, there may be presented to the Appellate Division of the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be stricken from the roll of attorneys."

A petition having been presented to this court containing a duly certified copy of an extract of the minutes of the United States District Court setting forth the facts of such indictment, conviction and sentence, this court entered an order of disbarment. (*Matter of Kaufmann,* 195 App. Div. 830.)

Thereafter an appeal from said judgment of conviction was taken to the United States Circuit Court of Appeals where said judgment of conviction was affirmed (*Rumely* v. *United States,* 293 Fed. 532), and thereafter the Supreme Court of the United States denied a petition for a writ of certiorari. (263 U. S. 713.) On March 13, 1924, the sentence was commuted by the President of the United States to imprisonment for one year in Westchester County Penitentiary, White Plains, N. Y. On April 11, 1924, a second commutation was granted reducing the imprisonment to one month, which the petitioner served. On January 19, 1925, the President of the United States granted to the petitioner " a full and unconditional pardon for the purpose of restoring his civil rights." Subdivision 4 of section 88 of the Judiciary Law provides

that " Upon a reversal of the conviction for felony of an attorney and counsellor-at-law, or pardon by the President of the United States or Governor of this State, the Appellate Division shall have power to vacate or modify such order or debarment."

It is under that provision that this application is made to this court.    There is no question of power involved because it is expressly conferred by statute.    The learned counsel for the petitioner has very earnestly argued that the petitioner was not guilty of the crime charged against him, that he was unjustly and improperly convicted, and that vital errors were committed upon the trial. It is sufficient to say that the conviction was unanimously affirmed by the United States Circuit Court of Appeals of the Second Circuit, and that an application for a writ of certiorari was denied by the Supreme Court of the United States.    We are concluded by the judgments of the United States courts and we are without power to review their proceedings.    When our order of disbarment was made, we were required to enter it by our own statutory law, the conviction having been for a felony.    If that conviction had been reversed upon appeal, an order of reinstatement would have been granted as of course, the ground for disbarment having been destroyed, there being no independent proof before us of professional or moral misconduct.    But the conviction was not reversed. It was affirmed, the Circuit Court of Appeals, in its extensive review of the facts and the law, saying: " The defendants had a fair trial under a valid indictment."    And the learned judge who tried the case, in denying the motion to set aside the verdict, said: " I listened to the evidence with patience for five or six weeks as it was being introduced.    I listened to the summing up of counsel, and I am not disposed to say that the jury did wrong in bringing in the verdict which it did."    The pardon of the President has set aside and annulled the penal consequences of the felony found to have been committed and has restored to the petitioner his civil rights, but it did not *ipso facto* reinstate him in his office of an attorney and counselor at law.    It did not restore to him *ipso facto* that good character which he was required to possess upon being admitted to the bar and required to maintain in order to remain therein.

In Annotated Cases, American and English (1917A, p. 1227), it is said: " Where proceedings to disbar an attorney are founded on the professional misconduct involved in a transaction which has culminated in a conviction of felony, it has been held that while the effect of the pardon is to relieve him of the penal consequences of his act, it does not operate as a bar to the disbarment proceeding, inasmuch as the criminal acts may nevertheless constitute proof

that the attorney does not possess a good moral character and is not a fit or proper person to retain his license to practice law. *People* v. *Burton,* 39 Colo. 164 * * *;  *People* v. *George,* 186 Ill. 122 * * *;  *People* v. *Gilmore,* 214 Ill. 569 * * *; *Nelson* v. *Com.,* 128 Ky. 779 * * *;  *Case of In re* ———— [*An Attorney*], 86 N. Y. 573; *In re Hirst,* 9 Phila. (Pa.) 216, * * *. In *People* v. *George, supra,* the Court said: ' The offense of which respondent was convicted was, under the statute, infamous, and his conviction for larceny and his sentence to the penitentiary for a felonious offense had the effect to degrade him, and establish not a good but a bad moral character.    The pardon set up in respondent's answer restored him, so far as the power of the Governor could, " to all his rights of citizenship, as provided by law." The rights of citizenship he had forfeited by his conviction of an infamous crime were, that he was " rendered incapable of holding any office of honor, trust or profit, of voting at any election, or serving as a juror." * * *   The pardon of the Governor restored respondent to all the rights he had forfeited by the conviction of the crime of larceny, and he was released from serving his term of imprisonment,— was relieved from the punishment the law inflicted for the offense.   But the pardon could not efface the moral turpitude involved in the crime.   It could not obliterate the moral stain upon his character.  That remains. * * *   The respondent having been convicted of a felony, as charged in the original information, notwithstanding the pardon does not possess such a " good moral character " as the statute requires and the purity of the bar demands of its members.' "

These were disbarment cases prosecuted after pardon which was held not to bar the proceeding.

It is apparent, it seems to me, from an examination of the cases, that there can be no question that if the conviction in any case was based upon improper, fraudulent acts of an attorney towards his clients, or upon such acts as demonstrate moral unfitness to continue as an attorney, the receipt of a pardon should have no effect upon the action of the court.   We may, therefore, as I see it, look into the nature of the offenses charged and found to have been committed to determine whether they were of such a character as would justify disbarment in and of themselves, or, as in the present case, to prevent a reinstatement.   Every man admitted to the bar in this State is required to take an oath to support the Constitution of the United States and the Constitution of the State of New York.  (See Judiciary Law, § 466; Const. art. 13, § 1.)   The acts set forth in the indictment were acts committed when the United States was engaged in the greatest war of all

recorded history. The conviction was founded upon what the court has determined were acts in violation of the United States statutes passed by the Congress of the United States as war measures. The contention is that they were not committed. We are foreclosed from considering that question by the judgment of conviction and its affirmance.

The Circuit Court of Appeals said: " The fourth count [of the indictment] charged that the defendants unlawfully, willfully, knowingly, feloniously, and corruptly conspired and agreed with each other to defraud the United States; while the fifth count charged them with having in the same manner conspired to commit an offense against the United States. The gravamen of the crime charged in the two counts is in fact the same. It grows out of the willful failure to report to the Alien Property Custodian, under the provisions of the Trading with the Enemy Act, * * * an indebtedness which the defendant Rumely had contracted with the Imperial German Government. The Trading with the Enemy Act, approved October 6, 1917, required by the provisions of section 7(a), 40 Stat. c. 106, p. 416,* that any person ' who is or shall be indebted in any way to an enemy or ally of an enemy ' shall report the fact to the Alien Property Custodian by written statement under oath containing such particulars as the Custodian shall require. The fourth count charged that defendant Rumely was indebted to the Imperial German Government in the sum of $1,301,700. The fifth count charged him with being indebted to that Government in the sum of $1,451,700. It was a part of the conspiracy alleged that the defendant should conceal the fact of the indebtedness to the German Government by making false and misleading reports to the Alien Property Custodian, from whom the true facts were to be concealed. * * *

" The claim of the Government is that the money with which the defendant Rumely bought the Mail was paid to him by Dr. Albert," who, according to his own admissions, had entered the service of the Government of Germany in 1895 when he was twenty-one years of age, and from that time to the time when he came to the United States had been continually in the German service. When he came to the United States he had a rank with the German government of Privy Councillor. After the rupture of diplomatic relations between the United States and Germany he returned to his own country and was made Alien Property Custodian, and later he became Under Secretary of State. He testified that he paid these moneys by direction of Dr. Dernberg. It was estab-

---

* See 40 U. S. Stat. at Large, 416, chap. 106, § 7, subd. (a).— [REP.

First Department, July, 1925. [Vol. 213

lished that this money " belonged to the Imperial German Government, and was part of the proceeds of two German Government loans that were financed in the United States, and that the other part of it was money that came from the British Government into the hands of Hays, Kaufmann & Lindheim, Albert's lawyers, as the proceeds of a refund or reimbursement for the seizure of the cargo of the steamship Wilhelmina, and therefore was the money of the German Government — the Wilhelmina being a German Government project."

The duty of a citizen in time of war requires him to give all that he has, even life itself, if necessary, to his country. The defendant has been found guilty of an attempt to conceal from his Government possession of a large sum of money, the property not alone of alien enemies, but the property of the Imperial German Government itself, the enemy of his country and, at that time, of civilization itself. No class in the community did more patriotic service in the late war than the members of the bar. We are unwilling to restore to that patriotic bar on terms of equality men found guilty of the offenses here charged. Intrusted as we are with the delicate and onerous task of supervision of the professional conduct of the bar practicing in this Department, bearing in mind the many efforts made to have us reopen and reverse our decisions in disciplinary matters, we are unable to reach the conclusion, notwithstanding the earnest and respectable advocacy here presented, that it would be wise and proper and in the public interest to grant the application here made to restore the petitioner to the bar from which he was properly and lawfully excluded.

The application should be denied.

DOWLING, MERRELL, MCAVOY and BURR, JJ., concur.

Application denied. Settle order on notice.