In the Matter of the Petition of S. WALTER KAUFMANN, Appellant, for Reinstatement as an Attorney and Counselor at Law.

In the Matter of the Petition of NORVIN R. LINDHEIM, Appellant, for Reinstatement as an Attorney and Counselor at Law.

**Jurisdiction — attorneys — disbarment — quære whether offense which is felony under Federal statute but only misdemeanor by State law requires disbarment of attorney — pardon opens door to inquiry by Appellate Division as to justness of conviction — erroneous holding by Appellate Division that it is concluded as to guilt by judgment of conviction — Court of Appeals precluded from directing judgment absolute in absence of finding by Appellate Division upon the merits.**

1. *Quære* whether an offense against the Federal government, which is a felony under the United States Criminal Code but only a misdemeanor under the Penal Law of this State, is to be reckoned as a felony within the meaning of subdivision 3 of section 88 of the Judiciary Law providing for disbarment of any attorney and counselor at law who shall be convicted of a felony.

2. Under subdivision 4 of section 88 of the Judiciary Law, providing that " upon the reversal of the conviction for felony of an attorney and counselor at law, or pardon by the President of the United States or Governor of this State, the Appellate Division shall have power to vacate or modify such order or debarment," a pardon opens the door to an inquiry by the Appellate Division as to the justice of the judgment of conviction. Upon application, therefore, for restoration to membership in the bar of former attorneys, disbarred after conviction in a Federal court of a felony, a holding by the Appellate Division that it is concluded as to their guilt of the crime of which they were convicted by the judgment of the United States courts and is without power to review the proceedings, is error.

3. Until the Appellate Division by such methods of inquiry as it deems expedient has made inquiry as to the guilt or innocence of the petitioners and has made a finding upon the merits, the Court of Appeals is not at liberty to render judgment absolute. It is for the Appellate Division to reach in the first instance a definitive conclusion.

*Matter of Kaufmann*, 213 App. Div. 555, reversed.

*Matter of Lindheim*, 213 App. Div. 560, reversed.

(Argued June 1, 1927; decided July 20, 1927.)

APPEAL, in each of the above-entitled proceedings, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 13, 1925, which denied an application for reinstatement as an attorney and counselor at law.

*William D. Guthrie* and *Abraham Tulin* for appellants. The Appellate Division erred as to its jurisdiction and duty under the Judiciary Law. (*Lyon* v. *M. R. Co.*, 142 N. Y. 298; *Lamport* v. *Smedley*, 213 N. Y. 82; *Allen* v. *Stevens*, 161 N. Y. 122; *United States* v. *Wiley*, 11 Wall. 508; *Gertgens* v. *O'Connor*, 198 U. S. 237; *People* v. *O'Hearn*, 196 N. Y. 221; *Palmer* v. *Van Sanvoord*, 153 N. Y. 612; *Matter of Robinson,* 209 N. Y. 354; *Matter of* ———, *an Attorney*, 86 N. Y. 563; *Matter of E., an Attorney*, 65 How. Pr. 171.)

*Charles H. Strong* for Association of the Bar of the City of New York.

CARDOZO, Ch. J. The petitioners, while members of the bar of this State, were convicted in the United States District Court for the Southern District of New York of the crime of conspiracy under section 37 of the United States Criminal Code. The charge was that they had conspired with one Rumely, and with other persons whose names were to the grand jury unknown, to make a false report to the Alien Property Custodian as to the ownership of a note for $100,000 then in their possession. The report was to the effect that the note was the property of one Herman Sielken, who was an enemy alien within the definition of the Trading with the Enemy Act. The fact was charged to be that the note was the property of the Imperial German Government, and that this was known to the petitioners. Upon the trial of that charge, the prosecution did not even attempt to supply direct evidence of any guilty knowledge by the petitioners that the ownership of the note was other than as stated in the report. The case went to the jury upon the theory

that there was circumstantial evidence of knowledge, or at least of what was characterized as imputed knowledge, the outcome of wilful blindness, of studied refusal to inquire, after suspicion has been aroused. It went to the jury, moreover, after a long trial which made it difficult to disentangle the evidence aimed at the petitioners from the evidence aimed at Rumely, whose activities in aid of the German government were likely to arouse resentment in patriotic minds. Disentanglement was made harder by the instructions of the trial judge that at least two of the three defendants identified by name in the indictment for conspiracy must be found guilty before a verdict of guilt could be returned against any one of them. With such a charge, a jury stood in need of unusual poise of mind and power of analysis if it was to weigh the case against the petitioners dispassionately and separately. It had been placed in the dilemma of permitting all the defendants to go free or of imputing guilty knowledge to at least one of the attorneys. Placed in this dilemma, it found a verdict against all. The Circuit Court of Appeals, without power upon a writ of error to reverse for error in fact (*Mounday* v. *U. S.*, 225 Fed. Rep. 965, 967), held that evidence of guilty knowledge was not lacking altogether. Instructions to the jury as to the effect of imputed knowledge were held to be not reviewable for the reason that the exception was noted after the jury had retired. The conviction of the three defendants was accordingly affirmed (*U. S.* v. *Rumely*, 293 Fed. Rep. 532; certiorari refused, 263 U. S. 713). Little significance is due to the refusal of the Supreme Court to allow a writ of certiorari. The writ does not issue to unravel the tangled strands of evidence upon a complicated record (*Fields* v. *U. S.*, 205 U. S. 292, 296).

The petitioners had been sentenced to serve a term of one year and one day in the United States penitentiary at Atlanta, Georgia. After the judgment of affirmance, the sentence was commuted by the President to imprison-

ment for one year in Westchester County Penitentiary, White Plains, New York. A second commutation reduced the term of imprisonment to one month, a sentence which was served. Finally, on January 19, 1925, there was granted to the petitioners a full and unconditional pardon. The President in granting this pardon acted in accordance with the recommendation of his Attorney-General, now Mr. Justice STONE of the Supreme Court of the United States, who after examining the record expressed a belief that the petitioners were innocent.

The Judiciary Law of this State (Cons. Laws, ch. 30) provides (§ 88, subd. 3): "Whenever any attorney and counselor-at-law shall be convicted of a felony, there may be presented to the Appellate Division of the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be stricken from the roll of attorneys." Conspiracy, though only a misdemeanor under the Penal Law of New York, is a felony under the United States Criminal Code (U. S. Criminal Code, § 355; 35 Stat. 1152). Upon proof of the judgment of conviction without more, the Appellate Division in March, 1921, made its order excluding the petitioners from the practice of the law. Since there has been no appeal from that order, we do not now determine whether the offense if committed is to be reckoned as a felony within the meaning of the statute (cf. *People* v. *Gutterson*, 244 N. Y. 243, 249; *Matter of Robinson*, 140 App. Div. 329; *Matter of Smith*, 216 App. Div. 173; *Matter of Ackerson*, 218 App. Div. 388). What concerns us now is that without independent ascertainment of the fact of guilt, disbarment followed automatically upon proof of the conviction.

The pardon by the President in January, 1925, made new remedies available. By section 88, subdivision 4, of the Judiciary Law: " Upon the reversal of the conviction for felony of an attorney and counselor-at-law, or pardon by the President of the United States or

Governor of this State, the Appellate Division shall have power to vacate or modify such order or debarment." Under the authority of that section, the attorneys, again protesting innocence, submitted a petition to the Appellate Division that they be restored to membership in the bar. Their prayer was reinforced by lawyers and judges of distinction who asserted a continued faith in them and an abiding and reasoned distrust of the justice of the verdict. The petition with the notice of motion accompanying it was served on the Association of the Bar of the City of New York which had moved the disbarment of the attorneys while the conviction was in force. The Bar Association by its executive committee resolved that it concurred in the petition for reinstatement, and authorized the designation of an attorney to make representation to the court accordingly. Upon the return day of the motion the court was so advised.

To this impressive challenge of the justice of the verdict, the Appellate Division has made response that the verdict is conclusive. It has not looked into the evidence and pronounced the judgment just. It has closed the door upon inquiry as forbidden and illicit. " The learned counsel for the petitioner has very earnestly argued that the petitioner was not guilty of the crime charged against him, that he was unjustly and improperly convicted, and that vital errors were committed upon the trial. It is sufficient to say that the conviction was unanimously affirmed by the United States Circuit Court of Appeals for the Second Circuit, and that an application for a writ of certiorari was denied by the Supreme Court of the United States. We are concluded by the judgments of the United States courts and we are without power to review their proceedings " (*Matter of Kaufmann*, 213 App. Div. 555). And again: " The conviction was founded upon what the court has determined were acts in violation of the United States statutes passed by the Congress of the United States as war measures. The

contention is that they were not committed. We are foreclosed from considering that question by the judgment of conviction and its affirmance."

We are unable to yield approval to these self-imposed restrictions upon the power of the Appellate Division to do justice to its officers. The same statute that attaches to conviction for a felony the penalty of forfeiture, attaches the opportunity for remission to reversal or to pardon. The matter is then at large, to be dealt with freely and generously, without other limitations than are inherent in the sense of justice of the judges. None is expressed. We think none other is implied. Upon an application for disbarment, a judgment of conviction is not conclusive against the attorney by force of any general doctrine of *res adjudicata*. This is so though the judgment has been rendered by a court of the same sovereignty (*Sims* v. *Sims*, 75 N. Y. 466, 471, 473; *Matter of Eldridge*, 82 N. Y. 161, 166; *Matter of an Attorney*, 86 N. Y. 563, 573; *Wilson* v. *Manhattan Ry. Co.*, 2 Misc. Rep. 127, 129; affd., on opinion below, 144 N. Y. 632; *People* v. *Rodawald*, 177 N. Y. 408, 425). *A fortiori*, it is so when the judgment has been rendered by a court of another sovereignty. The proceedings are between different parties for the vindication of different rights (cf. *Matter of Rouss*, 221 N. Y. 81, 85, 87). So far as common-law principles prescribe the consequences of conviction, the court to whose discipline an attorney is amenable may retry the issue of his guilt, and punish or acquit according to the promptings of its conscience. The statute (Judiciary Law, § 88, subd. 3) does indeed set bounds upon this freedom of inquiry as long as the conviction stands and the convict is without a pardon. While those conditions last, a court of this State in disciplining an attorney accepts the record of conviction, and refuses to go back of it. The impediments once removed, the range of scrutiny is as wide as it was at common law. No doubt the attorney seeking reinstate-

ment has the burden of satisfying the court of his fitness to be restored to so honorable a fellowship. For the welfare and repute of the profession the order of disbarment stands until the presumption of its correctness has been persuasively rebutted. But the honor of the profession does not demand the sacrifice of the innocent. A pardon may in some conditions be a warning as significant as a judgment of reversal that the looms of the law have woven a fabric of injustice. The very case at hand is indeed an apposite illustration. The record makes it plain that the pardon was granted because the President of the United States was advised by his Attorney-General that the petitioners were innocent. At no time has the Circuit Court of Appeals expressed an opinion to the contrary. Its power was exhausted when it found evidence of guilt, though weak or inconclusive (*Mounday v. U. S., supra*). Indeed, the prosecuting officer in his brief on the appeal refused to enter upon a discussion of the correctness of the verdict except within these limits. We are now asked to hold that though the immediate consequences of an unjust conviction in the courts of the nation can be avoided, at least as to the future, by the pardon of the President, there is no way in which the indirect consequences can be avoided, even after such a pardon, in the courts of the State. The mistake is sanctified by the verdict, so that none may name it a mistake, however visible the truth.

A *non possumus* so feeble has no warrant in the statute. A permanent disability to rise to the demands of justice will not be read into the judicial scheme by dubious construction. Back of the power of reinstatement there is a very different rationale. The rationale rather is that reversal or pardon impeaches the conviction to this extent at least, that the convict may show, if he can, that justice has miscarried. In the vast majority of cases he will urge his plaint in vain. A court jealously mindful of the honor of the profession will be slow to

override the verdict of a jury which heard the witnesses and saw them. Rare instances may arise, however, where one convicted, disbarred and pardoned may be able to satisfy the court that his guilt has not been proved or even to go farther and demonstrate his innocence. In these exceptional conditions, the administration of justice would be subject to reproach if an implacable law of remedies were to close the door forever upon the hope of vindication.

Even without the aid of statute, courts have found it possible, when the conviction of an attorney has been followed by a pardon, to heed the cry of innocence. There is a precedent in our own State. In *Matter of E., an Attorney* (65 How. Pr. 171, decided in 1879 before the present statute), the court held that though the office of an attorney was subject to forfeiture upon conviction of a felony, yet pardon made it proper to re-examine the justice of the verdict. Even more striking are the precedents in other jurisdictions. Thus, in *Matter of Wendel* (3 N. J. Misc. Rep. 312) an attorney was convicted of a felony and disbarred. He served his term and was pardoned. The Bar Association of Mercer County, New Jersey, investigating his guilt, made report that he was innocent. Upon application to the court, he was restored to the profession (cf. *Matter of Stevens*, 59 Cal. App. 251; *People ex rel. Bar Assn.* v. *Burton*, 39 Colo. 164).

When so much has been done on the footing of inherent power, the less reason there is to cut down by construction a statutory grant of power, made in general terms, without hampering conditions. Precedents cited to the contrary hold no more than this, that reinstatement will not follow automatically from pardon without more (*People ex rel. Johnson* v. *George*, 186 Ill. 122). There must be convincing proof of innocence before pardon will restore to the fellowship of the bar. Even innocence of crime will not suffice if there has been a failure to live up to

1927.]      Opinion, per CARDOZO, Ch. J.      [245 N. Y. 423]

the standards of morality and honor. Pardon does no
more than open the door to an inquiry that would other-
wise be barred. That much, however, it does. Courts do
not forget " that, under the most correct administration
of the law, men will sometimes fall a prey to the vindictive-
ness of accusers, the inaccuracv of testimony, and the
fallibility of jurors " (Kent, Comm. 1, 284). For this
as well as other reasons, the power to pardon is bestowed
on the Executive. For this, the statute says that upon
pardon or reversal, the power to reinstate shall be vested
in the courts.

It results that the petitioners have not yet had the
hearing to which their claim of innocence entitles them.
They have asked that their fitness for fellowship in the
profession be considered and determined. They have
been told that fitness will be adjudged upon the assump-
tion of their guilt. They may be able to prove innocence
to the point of triumphant demonstration. The triumph
will be futile, for the conviction will abide. So the court
below has ruled. We think the ruling may not stand.

The question remains as to the measure of the relief
that is due to the petitioners upon the appeal before
us now. We have given anxious thought to the argument
of their counsel that we should proceed upon this record
to adjudge their guilt or innocence, and make disposition
of the cause accordingly. We are satisfied that this
cannot be done consistently with orderly procedure and
with the established limitations upon our appellate
jurisdiction. For one purpose indeed we have thought
it proper to look into the record of the prosecution in the
Federal court, which is here as an exhibit. If the case
made out against the petitioners could be seen to be
plainly adequate, there might be doubt of our duty to
reverse and remit in aid of a barren technicality. But
our scrutiny of the record has sufficed at least to show
that more than a barren technicality is here. There is
grave doubt whether there is any evidence of the guilt

of these petitioners, and doubt still graver whether the evidence, if any, is strong enough to bring persuasion that justice has been done. That much ascertained, we must leave it to the Appellate Division to reach in the first instance a definitive conclusion. This court is a court of review, its jurisdiction confined to questions of law with exceptions not now important. At most we may pass upon the question whether there is any evidence of guilt. We may not touch the broader question whether guilt, though supported by evidence, has been proved so convincingly as to satisfy the conscience. The ampler powers that belong to us where the judgment is one of death are altogether exceptional, their origin dependent upon express grants of jurisdiction in the Constitution and the statutes. But even if we were to hold that upon the record now before us there is no evidence of guilt, a decree of reinstatement would be improper at this stage. The Appellate Division has been invested with supervisory and corrective powers in respect of the conduct of attorneys (*Matter of Dolphin*, 240 N. Y. 89; *Matter of Flannery*, 212 N. Y. 610). Within the limits of common-law principles (*Matter of Eldridge, supra*) it may exercise those powers by such methods of inquiry as it will. In the case at hand, for illustration, it is not restricted to the scrutiny of the record in the Federal court. It may summon the parties or other witnesses before it or before a referee of its selection, and determine guilt or innocence by these and other aids. Until it has done these things to such an extent as it holds to be expedient and has made a finding upon the merits, a court of review is not at liberty upon a record less definitive to render judgment absolute. The petitions, when returned to the Appellate Division, will go back to a court empowered by force of this decision to probe until it reaches truth. They are thus assured of that considerate scrutiny which is the due of misfortune crying out to its judges that it has been the victim of oppression.

The order in each case should be reversed, and the applications remitted to the Appellate Division for further proceedings in accordance with this opinion.

Pound, Crane, Andrews, Kellogg and O'Brien, JJ., concur; Lehman, J., absent.

Ordered accordingly.