In the Matter of the Petition of CHESTER WILLIAM McNALLY, for a Hearing in the Matter of His Fitness to Be Reinstated in the Profession as an Attorney and Counselor-at-Law.

First Department, February 7, 1941.

*James I. Cuff*, for the motion.

*Samuel C. Lewis* of counsel [*Einar Chrystie*, attorney], for The Association of the Bar of the City of New York, opposed.

MARTIN, P. J. The applicant, Chester William McNally, was convicted in the Court of Special Sessions of the crime of exacting from one Abraham Sonne, an attorney, the sum of $900 as a condition for the settlement of a fraudulent claim made by Sonne on behalf of a client against the Yorkshire Indemnity Company, of which Mr. McNally was general counsel. The conviction of McNally was affirmed by this court in 249 Appellate Division, 733, and by the Court of Appeals in 275 New York, 457.

In an opinion in the subsequent McNally disciplinary proceeding (252 App. Div. 550) this court said: "Notwithstanding the crime of which respondent McNally was convicted is but a misdemeanor, the acts constituting said crime involve moral turpitude, and, therefore, call for his disbarment."

On August 29, 1939, McNally received a pardon from the Governor and then moved for reinstatement. On December 1, 1939, this court denied that motion. (258 App. Div. 865.) Thereafter and on April 16, 1940, the Court of Appeals (282 N. Y. 799), which had granted leave to appeal (Id. 809), affirmed the order of this court denying the application for reinstatement "without prejudice to an application by the appellant to the Appellate Division for a hearing in the matter of his fitness to be reinstated in the profession. (*Matter of Kaufmann*, 245 N. Y. 423)."

The applicant then moved on April 26, 1940, for a hearing in the matter of his fitness to be reinstated and the court referred the matter to Hon. James A. O'Gorman, official referee, to hear and report upon the issues presented. The referee has filed a report finding that the respondent's claim of innocence has not been sustained and that the credible evidence established his guilt.

The Association of the Bar of the City of New York, which opposed the application for reinstatement, has moved to confirm the report of the referee.

In opposition to that motion, the applicant urges that his motion for reinstatement be granted in view of the surrounding circumstances, his past reputation and his strict adherence to the disbarment order.

It should be here noted that Sonne confessed that he participated in the transaction and later testified for the People against McNally. Both McNally and Sonne were disbarred by this court. (252

App. Div. 550.) It is not likely that Sonne, one of the principals, would, if innocent, confess and accept disbarment.

In view of the additional information presented on the hearings before the referee, and in order to fully consider this renewed application, it is necessary to set forth a few of the facts.

On October 21, 1935, the Yorkshire Indemnity Company issued to one James J. Hamill a $10,000 accident policy on his automobile. Thereafter, Hamill conspired with one Finch to submit a false claim based upon an alleged accident on November 13, 1935, in which Finch claimed he was struck by Hamill's car and sustained serious injuries. The claim was wholly fictitious — no accident had occurred and no injuries had been sustained. Finch retained Abraham Sonne to prosecute his claim. After the usual claim letter had been written to the Yorkshire Indemnity Company, Sonne conferred with McNally and Steup, secretary of the company, about a settlement of the case. Sonne testified that they, on behalf of the company, offered to settle the case, but demanded, as their personal " cut," twenty per cent of the gross payment. He finally agreed to that figure. After a report of a physical examination had been received by the indemnity company, Mr. Steup directed that a check for $4,200 be paid Sonne in settlement of the case.

This settlement was made by McNally and Steup despite many suspicious circumstances surrounding the claim. No notice was given of the accident by the assured until one and a half months after the alleged accident. There was no police blotter report on the accident although the assured stated he had gone to the police station. The alleged claimant could not be found at the address he had given. No witnesses to the alleged accident could be found. The liability of the Yorkshire Indemnity Company had been reduced, by reinsurance, to but $5,000. Nevertheless McNally and Steup agreed to and finally did settle this false claim for $4,200.

Finch submitted, through Sonne, a release which was not on the form required by the Yorkshire Indemnity Company. A proper form was prepared and Kaner, McNally's office associate, was given the release and a check for $4,200 and, accompanied by Sonne and another, he left New York city for Utica where the claimant Finch was then located. Kaner testified that McNally paid in cash the expenses involved in this trip to Utica. McNally denied having done so and said he told Kaner that Sonne should bear the expense. After the release had been properly executed by Finch, the check was delivered to Sonne, who in turn gave Finch a check for fifty-five per cent of the recovery as Sonne had the case on a forty-five per cent contingency retainer. This delivery of the check and the release took place on January 25, 1936. On January 29, 1936, four

days later, McNally telephoned Sonne and asked for his share, in fact he requested more than the agreed twenty per cent. He asked for " an even $900 " and promised to make up the difference to Sonne at some future time.

Sonne testified that he called at McNally's office at one o'clock that afternoon, January 29, 1936. He saw McNally and gave him an envelope with $900 in cash. He saw McNally take the money out of the envelope and give some of it to Steup. Sonne then left.

The testimony of Sonne was corroborated in many details by that of Kaner, a member of the bar and at that time an office associate of McNally, as well as by the bank accounts of Kaner, McNally and Sonne. Kaner testified that he saw McNally in his office at about one-thirty P. M. that day and that McNally said: " Charley, here is the money I owe you for the Christmas fund, plus $150 I want you to deposit for my account." The witness then said McNally gave him $470 and he deposited $320 in his own account and $150 in McNally's account. The bank records of that day, January 29, 1936, show the withdrawal of $900 by Sonne and the deposit of $320 in cash in Kaner's acount and $150 in cash in McNally's account.

The applicant sought to explain the deposit of $150 in his account by the statement that he assumed it was a repayment to him of that sum which he had given Kaner in early December to purchase Christmas presents for clients. He added that Kaner had not so used the money and that the applicant had told Kaner he could use it in connection with the expenses of Kaner's father who was then in the Memorial Hospital. The record, however, discloses that Kaner's father had been released from the hospital more than a year and a half prior thereto and all of his bills had been paid during the preceding year. Bank records revealed that both Kaner's father and mother had ample funds at that time and that Kaner himself at all times had a balance of more than $2,000 in his personal account. Kaner not only denied that he ever borrowed from the applicant but said that he had, in fact, loaned $500 to the applicant after his arrest. Although the applicant denied having borrowed that sum from Kaner, he was unable to explain the transaction when confronted with a canceled check for that amount.

The applicant, McNally, not only denied the charge that he demanded and accepted money, but sought to establish an alibi, claiming that he was in the First District Municipal Court, Brooklyn, on January 29, 1936. Several witnesses were produced to testify to the fact that he was present that morning at the calendar call and that he remained until one P. M. McNally, Steup and a man named Henderson, an employee of the Yorkshire Indemnity

Company, said they had lunch together in Brooklyn. McNally and Henderson testified that they returned to court at about two P. M. and McNally began the trial of an action about one-half hour later.

It is not disputed that McNally was in court that morning and that afternoon, but the evidence established and the referee reached the conclusion that McNally was present in his office at the time Sonne said he gave him the money and also at the time Kaner said McNally gave him the money owed to him and also the money to be deposited in the bank. Speaking about the testimony of the witnesses called by McNally to establish his presence in court, the referee said: " These witnesses had no particular reason to keep track of McNally's movements in and about the court that day. Their testimony was vague and indefinite. I was not impressed with it, and so far as credible I do not find it necessarily inconsistent with the testimony of the witnesses Sonne, Kaner and Munch, the office stenographer, who were positive and convincing in their testimony that McNally and Steup were in McNally's office at 60 John Street in Manhattan about 1:00 to 2:00 o'clock that day. I regard them as truthful witnesses and I believe their testimony. McNally's credibility was impaired by his unfounded statements of fact in several instances during his examination; he admitted many of his statements were inaccurate but charged it to a poor memory."

The facts disclosed by the record not only disprove many of McNally's statements but show either a bad memory or deliberate intent to deceive.

It is also apparent that at the time he demanded and received money from Sonne, McNally was in financial straits. In this connection the report of the referee sets forth: " During this period and for some time previously it appears that McNally was under financial pressure. He repeatedly gave checks which were returned from the banks marked insufficient funds. These checks were generally small checks and in most instances were afterwards paid. In at least one instance, however, the holder of such a check, the Cord Meyer Development Company, brought suit against the petitioner and obtained a judgment for $164.50 on April 13, 1933, which judgment remains unsatisfied. Two banks where McNally had an account wrote to him to withdraw his account because of his habit of overdrawing his account."

It is particularly reprehensible for a man of respondent's attainments and position to have committed an offense of this type. That being so, the court cannot consider the sufferings entailed by the penalty of disbarment, where the facts in the first instance

require the imposition of that penalty. Otherwise its deterrent effect would be of very little value.

We must not overlook the fact that in addition to committing the serious crime which three courts held was proved beyond a reasonable doubt on a confession by one of the principals, supported by substantial corroborative testimony by office associates and documentary proof, the applicant persisted in an effort not only to defeat the ends of justice, but, by false testimony, to destroy the reputation of others and to establish a so-called alibi.

On the hearings before the referee, the applicant, in his cross-examination of Mr. Botein and Mr. Sonne, sought to convey the impression that Sonne's former wife, who divorced Sonne in 1937 and remarried, had gone to the office of the district attorney or to the Association of the Bar and stated that the testimony of Sonne in relation to this case was false. The former Mrs. Sonne was produced before the referee by the attorneys for the respondent and she denied that she had ever gone to either the district attorney or the Bar Association. Moreover, she stated that she had no reason to doubt the truth of Sonne's testimony.

Each proceeding instituted by this applicant has thrown additional light upon the original transaction and has demonstrated very forcibly the justice of the result reached by the Court of Special Sessions on the original trial in which this applicant was a defendant.

It having been fully established that the applicant is unfit for membership in the legal profession, the report of the referee should be confirmed and the motion for reinstatement denied.

O'MALLEY, TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Motion to confirm report of referee granted and motion for reinstatement denied.