Matter of Gold (2026 NY Slip Op 00895)

Matter of Gold

2026 NY Slip Op 00895

Decided on February 18, 2026

Appellate Division, Second Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 18, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
DEBORAH A. DOWLING, JJ.

2022-10372

[*1]In the Matter of Simone Melissa Gold, admitted as Simone Tizes, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Simone Melissa Gold, respondent. (Attorney Registration No. 2782845)

The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on January 29, 1997, under the name Simone Tizes. By decision and order on motion dated September 26, 2023, this Court, pursuant to 22 NYCRR 1240.12(c)(3)(iii), directed the respondent to show cause at a hearing before the Honorable Ralph T. Gazzillo, as Special Referee, why a final order of suspension, censure, or disbarment should not be made based on her conviction on February 8, 2022, in the United States District Court for the District of Columbia of knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 USC § 1752(a)(1), a class A misdemeanor. By order to show cause dated February 16, 2024, the respondent moves (1) pursuant to CPLR 6301 to stay enforcement of this Court's decision and order on motion dated September 26, 2023, (2) pursuant to CPLR 3001 for a declaration that 18 USC § 1752(a)(1) is essentially similar to Penal Law § 140.05, which is a violation-level offense, and (3) to amend this Court's decision and order on motion dated September 26, 2023, so as to remit the matter to the Grievance Committee for the Tenth Judicial District for a private resolution.

Catherine A. Sheridan, Hauppauge, NY (Ian P. Barry of counsel), for petitioner.
Long Tuminello, LLP, Bay Shore, NY (Michelle Aulivola of counsel), for respondent.

PER CURIAM

OPINION & ORDER
By affirmation dated December 22, 2022, on notice to the respondent,
the Grievance Committee for the Tenth Judicial District advised the Court that on February 5, 2021, the respondent was charged with (1) obstruction of an official proceeding and aiding and abetting, in violation of 18 USC §§ 1512(c)(2) and 2, a class C felony; (2) entering and remaining in a restricted building or grounds, in violation of 18 USC § 1752(a)(1), a class A misdemeanor; (3) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 USC § 1752(a)(2), a class A misdemeanor; (4) disorderly conduct in a Capitol building, in violation of 40 USC § 5104(e)(2)(D), a class B misdemeanor; and (5) parading, demonstrating, or picketing in a Capitol building, in violation of 40 USC § 5104(e)(2)(G), a class B misdemeanor. On February 8, 2022, by written plea agreement and an accompanying statement of offense, the respondent pleaded guilty before the United States District Court for the District of Columbia to entering and remaining in a restricted building or grounds, in violation of 18 USC § 1752(a)(1), a class A misdemeanor. On June 16, 2022, the respondent was sentenced to a term of imprisonment of 60 days, to be followed [*2]by a term of 12 months of supervised release, and directed to pay a fine in the sum of $9,500 and restitution in the sum of $500. By affirmation of counsel dated January 10, 2023, submitted in opposition to the Grievance Committee's affirmation, the respondent asked the Court to dismiss the matter against her or issue a letter of advisement. By decision and order on motion dated September 26, 2023, this Court, pursuant to 22 NYCRR 1240.12(c)(3)(iii), directed the respondent to show cause at a hearing before a Special Referee why a final order of suspension, censure, or disbarment should not be made based on her conviction of knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 USC § 1752(a)(1), a class A misdemeanor.
By order to show cause dated February 16, 2024, following a prehearing conference, the respondent moves (1) pursuant to CPLR 6301 to stay enforcement of the Court's decision and order on motion dated September 26, 2023, (2) pursuant to CPLR 3001 for a declaration that 18 USC § 1752(a)(1) is essentially similar to Penal Law § 140.05, which is a violation-level offense, and (3) to amend the Court's decision and order on motion dated September 26, 2023, so as to remit the matter to the Grievance Committee for a private resolution. Following a hearing on March 7, 19, and 29, 2024, the Special Referee filed a report dated May 14, 2024, setting forth his finding that the respondent failed to demonstrate why a final order of public discipline should not be made. The Grievance Committee moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent submits an affirmation of counsel in opposition, requesting that the Court disaffirm the Special Referee's report and refer the matter to the Grievance Committee for a private resolution. The Grievance Committee submits an affirmation in reply. By two letters dated January 31, 2025, and April 17, 2025, the respondent notifies the Court that she was pardoned by President Donald J. Trump in connection with her conviction and reiterated her requests that the Court disaffirm the Special Referee's report and refer the matter to the Grievance Committee for a private resolution. The presidential pardon forgives the respondent's conviction but does not nullify it (see Matter of Barash , 20 NY2d 154, 157-158, citing Matter of Kaufman , 245 NY 423), and therefore, the basis of this disciplinary proceeding remains.
As part of the respondent's plea agreement, she confirmed that the accompanying statement of offense "fairly and accurately" described her actions and involvement in the offense to which she pleaded guilty and acknowledged "that the charges to be dismissed at the time of sentencing were based in fact." According to the statement of offense, the respondent traveled with her codefendant, John Strand, from Tampa, Florida, to Washington, D.C., and on January 5, 2021, the respondent gave a speech in support of the use of hydroxychloroquine and against COVID-19 lockdowns. On January 6, 2021, although the exterior plaza of the United States Capitol (hereinafter the Capitol) was closed to members of the public, the respondent entered the restricted area around the Capitol and stood with a crowd outside the East Rotunda doors. Shortly before the respondent breached the East Rotunda doors, "[d]irectly in front of [her,] . . . a law enforcement officer was assaulted and dragged to the ground." After entering the Capitol, the respondent began a speech in Statuary Hall regarding her opposition to the COVID-19 vaccine mandates and government-imposed lockdowns. Multiple law enforcement officers had to intervene before the respondent left Statuary Hall.
In the statement of offense, the respondent also admitted that she knew that when she entered the Capitol on January 6, 2021, she did not have lawful authority to do so. The statement of offense also stated that on January 6, 2021, at approximately 1:00 p.m., a joint session of the United States Congress convened at the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election. Temporary and permanent barricades were in place around the exterior of the building, and Capitol Police were present and attempting to keep a large crowd away from the Capitol. The exterior doors and windows of the Capitol were locked or otherwise secured, and members of the Capitol Police attempted to maintain order and keep the crowd from entering the Capitol. At approximately 2:00 p.m., members of the crowd forced entry into the Capitol, including by breaking windows and assaulting members of law enforcement. As with the respondent, these crowd members were not authorized to enter or remain in the building. Members of the United States House of Representatives and the United States Senate and then Vice President Mike Pence evacuated chambers, and the session was effectively suspended until shortly after 8:00 p.m. the same day. The riot resulted in substantial damage to the Capitol, requiring more than $1.4 million for repairs.
United States District Court Judge Christopher R. Cooper, who presided over the [*3]respondent's sentencing, rejected the notion that the respondent was a "casual bystander" in the events of January 6, 2021, stating that video evidence showed that she was "part of an angry and aggressive . . . mob, crowd, of people intent on getting past law enforcement and entering the [Capitol] . . . where . . . police were obviously trying to keep people out." Judge Cooper noted that a Capitol police officer had been "pulled to the ground right in front of [the respondent]" and that she "used that as an opportunity to get into the building." Judge Cooper also stated that "[g]iven the chaos and the broken glass and the presence of the multiple police officers, it is obvious that [the respondent] knew it was a very dangerous and potentially violent situation, yet [the respondent] went in nonetheless," and that she remained in the Capitol for between 45 and 60 minutes, continuing to give speeches despite "multiple officers" directing her to leave. Although the respondent received a two-point sentencing reduction based on her acceptance of responsibility for her crime, Judge Cooper did not believe that she had "truly accepted responsibility" based on, inter alia, the respondent's characterization on a website that her prosecution was political persecution and an attempt to intimidate her for exercising her First Amendment rights. The respondent failed to mention the lives lost at the Capitol on January 6, 2021, and in the aftermath, or the experience of members of Congress and their staff members during the "chaos" of that day. Judge Cooper noted the respondent's clear intelligence, which led him to believe that the respondent "well knew what [she was] doing."
The Grievance Committee's hearing evidence included the indictment, the respondent's written plea agreement and the accompanying statement of offense, the transcript of the sentencing proceeding, and the criminal judgment. The respondent submitted as exhibits a permit authorizing her to give a speech outside on the Capitol grounds on January 6, 2021, a certificate of termination from supervised release, a video prepared for and submitted to the District Court in connection with the respondent's sentencing, of the respondent speaking about herself and her background and the recorded testimony of six character witnesses, and a video of closed-circuit television footage capturing the respondent's entry into the Capitol on January 6, 2021. The videos were accepted by the Special Referee over the Grievance Committee's objection.
The respondent asserted several facts at the hearing that differed from the facts she swore to as part of her plea agreement. The respondent is a certified emergency physician who has served low-income populations for much of her medical career. She testified that the social media director of her health policy nonprofit organization, America's Frontline Doctors, arranged for her to give two speeches in Washington, D.C., on January 5 and 6, 2021, as they anticipated a large audience "because of the election." Although she had a permit to speak in a grassy area outside of the Capitol, she was ultimately disallowed from giving her speech there and sought another location for her speech. She testified that she attempted to present her speech on the Capitol steps, but it was crowded there and she could not be heard. According to the respondent, the crowd intensified quickly, and she was unable to extricate herself. She was then "swept into the building along with hundreds or thousands of other people" and "propelled into the building." The respondent testified that she could not leave the Capitol because the door she had entered through had people pouring in through it. Although in her plea agreement she swore that multiple law enforcement officers had to intervene before she stopped giving a speech inside the Capitol in Statuary Hall and left Statuary Hall, she testified at the hearing that the first time that a law enforcement officer asked her to leave the building, she went to wait in line to do so. She further claimed that she thought that the members of law enforcement who were present inside of the Capitol "didn't mind people who were there" and that she did not realize that the gathering was an "insurrection" or that her participation "was a problem" until the day after, despite her acknowledgment in her plea agreement that she knew that she was not authorized to enter the Capitol at the time that she entered and had not undergone any security screening in order to do so.
At the hearing, rather than confirming that a law enforcement officer was assaulted and dragged to the ground directly in front of her, the respondent testified that she saw the officer fall. Notwithstanding her entry into the Capitol following the officer's assault, she claimed that she would never knowingly put herself in a situation that would hurt other people or her country. The respondent additionally testified that there were no security barriers marking the restricted area outside the Capitol and that "there was no evidence of it being restricted," despite her acknowledgment in her plea agreement that there were permanent and temporary security barriers around the Capitol and posts secured by Capitol Police.
Following the hearing, the Special Referee filed a report dated May 14, 2024, in [*4]which he discussed the respondent's mitigation evidence, including her dedication to health policy and her medical profession, her numerous character witnesses and letters, her lack of disciplinary history, and her cooperation with the Grievance Committee's investigation. The Special Referee characterized the respondent's acknowledgment of her culpability as "qualified and less than enthusiastic" and noted that her entry into the Capitol did not appear "coerced, forced or involuntary." The Special Referee was therefore "not prepared to find that the proof supports the innocent explanation and conclusion that [the respondent's] defense suggests" and determined that the respondent did not demonstrate why a final order of public discipline should not be made.
The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper, noting that the respondent has no disciplinary history. The respondent submits an affirmation of counsel in opposition, requesting that the Court disaffirm the Special Referee's report and refer the matter to the Grievance Committee for a private resolution. The respondent's motion to stay enforcement of the Court's decision and order on motion dated September 26, 2023, for a declaration that 18 USC § 1752(a)(1) is essentially similar to Penal Law § 140.05, and to amend the Court's decision and order on motion dated September 26, 2023, so as to remit the matter to the Grievance Committee for a private resolution remains before the Court.Findings and Conclusion 
We find that the Special Referee properly concluded that the respondent failed to meet her burden of establishing why this Court should not issue a final order of suspension, censure, or disbarment. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. Despite the respondent's admissions in her plea agreement, she has attempted in this disciplinary proceeding to reframe her conduct as unwitting and even well-meaning. This disingenuousness is a significant aggravating factor. Therefore, under the totality of the circumstances, we find that the respondent's conduct warrants her suspension from the practice of law for a period of five years. Furthermore, due to her admissions regarding her culpability, the actions underlying her crime are undisputed, and the President's pardon does not alter the respondent's misconduct or the basis of this proceeding. The respondent's motion to stay enforcement of the Court's decision and order on motion dated September 26, 2023, for a declaration that 18 USC § 1752(a)(1) is essentially similar to Penal Law § 140.05, and to amend the Court's decision and order on motion dated September 26, 2023, so as to remit the matter to the Grievance Committee for a private resolution is denied.
LASALLE, P.J., DILLON, DUFFY, BARROS and DOWLING, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the motion of the respondent, Simone Melissa Gold, admitted as Simone Tizes, pursuant to CPLR 6301 to stay enforcement of the Court's decision and order on motion dated September 26, 2023, pursuant to CPLR 3001 for a declaration that 18 USC § 1752(a)(1) is essentially similar to Penal Law § 140.05, and to amend the Court's decision and order on motion dated September 26, 2023, so as to remit the matter to the Grievance Committee for a private resolution is denied; and it is further,
ORDERED that the respondent, Simone Melissa Gold, admitted as Simone Tizes, is suspended from the practice of law for a period of five years, commencing March 20, 2026, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 20, 2030. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension she (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted herself; and it is further,
ORDERED that the respondent, Simone Melissa Gold, admitted as Simone Tizes, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Simone Melissa Gold, admitted as Simone Tizes, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Simone Melissa Gold, admitted as Simone Tizes, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court