Bruce E. BURNETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1996–CA–003125–MR.

Court of Appeals of Kentucky.

Jan. 22, 1999.

Case Ordered Published by Supreme Court Oct. 13, 1999.

Discretionary Review Denied by Supreme Court Oct. 13, 1999.

Kenneth W. Smith, Lexington, for Appellant.

A.B. Chandler, III, Attorney General, Elizabeth A. Myerscough, Assistant Attorney General, Frankfort, for Appellee.

Before: DYCHE, EMBERTON and JOHNSON, Judges.

## OPINION

EMBERTON, Judge.

On June 27, 1995, the appellant, Bruce Burnett, was indicted on eleven counts of theft by failure to make required disposition of property and one count of theft by deception. Counts 1 through 10, theft by failure to make required disposition, and the theft by deception charge were dismissed. Appellant entered an *Alford* plea to Count 11 conditioned on the right to appeal and was sentenced to three years' imprisonment.

The allegations contained in the indictment were the subject of an investigation and hearing conducted by the Commonwealth of Kentucky, Department of Insurance, that resulted in the revocation of appellant's insurance license and the assessment of a civil penalty of $1,000 per violation for a total of $44,000, pursuant to Kentucky Revised Statutes (KRS) 304.99–020. The insurance commissioner found that appellant failed to remit to eleven different insurance companies the previously collected premiums and had converted those premiums to his own use. The total amount appellant was found to have converted to his own use was $1,547,937.54.

Under the double jeopardy clause of the Fifth Amendment to the Constitution of the United States and Section 13 of the Constitution of Kentucky, an accused is protected from three abuses: "(1) a second prosecution of the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Hourigan v. Commonwealth*, Ky., 962 S.W.2d 860, 862 (1998). In *United States v. Halper*, 490 U.S. 435, 109 S.Ct.

1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that a "defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 109 S.Ct. at 1902. Although the court recognized that civil and criminal sanctions for the same conduct are generally appropriate, double jeopardy may be implicated in the "rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.*

In *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Supreme Court, presented with the opportunity to revisit *Halper,* overruled what it found to be an "ill considered" opinion. Specifically, it found the *Halper* test for determining whether a particular sanction is punitive to be unworkable. The court noted that the *Halper* court deviated from the traditional double jeopardy analysis in two respects. First, it did not inquire whether the successive punishment is a "criminal" punishment, but held instead that the imposition of any punishment is subject to double jeopardy constraints. Second, the *Halper* court focused on the assessment of the character of the sanctions rather than on an evaluation of the statute on its face. 118 S.Ct. at 494.

█ Retreating to the traditional principles of double jeopardy, the *Hudson* court emphasized that "whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." 118 S.Ct. at 493. In direct contradiction of the dictates of *Halper,* the initial inquiry of the court is whether the legislature indicated a preference for a criminal or civil label. The ultimate inquiry is, however, " 'whether the statutory scheme was so punitive either in purpose or effect,' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty[.]' " *Id.* (Citations omitted). The latter inquiry is guided by specific considerations which the court delineated as follows:

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. (Citations omitted). *Id.*

█ It is clear that under *Hudson* the prosecution of appellant after the imposition of civil sanctions does not violate the double jeopardy clause. The legislature clearly intended KRS 304.99–020 to be civil in nature since it expressly provides that the assessment of a penalty pursuant to its provisions is "civil." Unlike KRS 304.99–010, which provides for a fine upon a criminal conviction and is clearly criminal in nature, KRS 304.99–020 is a distinct civil penalty and not dependent on criminal liability. *Taylor v. Commonwealth,* Ky., 799 S.W.2d 818 (1990).

█ The monetary sanction here does not involve an affirmative disability or restraint. Historically, monetary sanctions have been recognized as enforceable by civil proceedings. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). Under KRS 304.99–020, *scienter,* the state of mind of the violator, is not a factor. It applies to any person who violates the provisions of the insurance code regardless of the violator's state of mind.

■ The fourth consideration is whether the imposition of the sanction promotes the traditional aims of punishment. Generally, the imposition of monetary penalties has the effect of deterring others from engaging in similar conduct. The mere presence of this purpose, however, is insufficient to render a sanction criminal where it also serves civil goals. *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The public interest is served by the regulation of the insurance industry and the penalties imposed permit the government to effectively promote that public interest.

The final guidelines offered by the court in *Hudson,* consider the sanction in relation to its purpose. While the excessiveness of the sanction was the determining factor in *Halper,* in accordance with *Hudson* it is now only one factor. In appellant's case, however, we are convinced that even under the *Halper* test the double jeopardy clause does not preclude his criminal prosecution.

Appellant is not a small-gauge offender as presented in *Halper.* Where the defendant has prospered by his illegal activity and the civil sanction imposed is less than the offenders ill-gotten gains, even the court in *Halper* did not intend to preclude a subsequent criminal prosecution. In this case it was found that appellant converted $1,547,937.54 to his own use. The imposition of the maximum civil sanction under KRS 304.99–020 is a small percentage of that amount. Appellant could not have a reasonable expectation that the law would permit him to retain property obtained by his illegal conduct. This situation is analogous to a forfeiture proceeding where the wrongdoer loses only that which he has illegally obtained. As stated in *United States v. Tilley,* 18 F.3d 295, 300 (1994):

In short, the wrongdoer has nothing, at least nothing to which the law entitles him, to lose from the possible confiscation of the proceeds from his criminal trade. Thus, we believe the forfeiture of proceeds from illegal drug sales is more

closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626, 109 S.Ct. 2646, 2652–53, 105 L.Ed.2d 528 (1989) (stating that "the government does not violate the Sixth Amendment if it seizes ... robbery proceeds, and refuses to permit the defendant to use them to pay for his defense ..." because, "[t]he money, though in [the defendant's] possession, is not rightfully his"); *see also Rex Trailer [Co. v. U.S.],* 350 U.S. [148] at 153, 76 S.Ct. [219] at 222 n. 6 [100 L.Ed. 149] (stating that civil sanction may serve to avoid unjust enrichment). Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment "within the plain meaning of the word." *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902.

The life of the *Halper* opinion was uncharacteristically brief having been overruled by the Supreme Court before the state and federal courts had the opportunity to fully understand its application and breadth. This court has dealt frequently with novel double jeopardy questions which have been raised in the wake of *Halper* and it is hoped that *Hudson* will put to rest many of the attempts to broaden the scope of the double jeopardy clause. In the present case, under either *Hudson* or *Halper,* there was no violation of the double jeopardy clause.

The judgment is affirmed.

DYCHE, Judge, concurs.

JOHNSON, Judge, concurs in result only.