**Basil TURBYFILL, Appellant,**

v.

**EXECUTIVE BRANCH ETHICS COMMISSION, Appellee.**

No. 2008–CA–001394–MR.

Court of Appeals of Kentucky.

Nov. 20, 2009.

As Modified Jan. 29, 2010.

Patrick F. Nash (argued), Joe A. Jarrell, Lexington, KY, for appellant.

John R. Steffen (argued), Dana Nickles, Frankfort, KY, for appellee.

Before NICKELL, THOMPSON and WINE, Judges.

*OPINION*

THOMPSON, Judge.

The issue in this appeal is whether the Kentucky Executive Branch Ethics Commission (EBEC) has authority to pursue an administrative proceeding for the purpose of sanctioning Basil Turbyfill, who was previously pardoned by Governor Ernie Fletcher. Turbyfill moved to dismiss the proceeding on the basis that Governor Fletcher's pardon was a full pardon precluding any criminal or civil action against him arising from any alleged violations of the Kentucky merit system laws prohibiting employment decisions based on political activities. The circuit court denied Turbyfill's petition for judicial review and declined to order dismissal of the administrative proceeding, ruling that the pardon did not apply to the EBEC proceeding. We agree with the circuit court and affirm.

The controversy began during the Fletcher administration when allegations of criminal violations of the merit system hiring laws were made against several state officials. The complete factual background that precipitated the Governor's pardon of those implicated in the criminal investigation is set forth in *Fletcher v. Graham*, 192 S.W.3d 350 (Ky.2006). Its complete reiteration would not further the purpose of this opinion, so we confine our discussion to those facts pertaining to Turbyfill.

During the Fletcher administration, Turbyfill served as the Deputy Secretary of the Finance and Administration Cabinet. Upon request of the Attorney General in May 2005, a Franklin County special grand jury began investigating members of the Fletcher administration, including Turbyfill, for possible violations of Kentucky's merit system laws. For several months, the grand jury investigated and ultimately issued several indictments alleging misdemeanor violations of the merit system laws and felony violations alleging evidence and witness tampering. Turbyfill was charge with one misdemeanor violation. Subsequently, Governor Fletcher, through Executive Order 2005–924, issued a pardon to those investigated by the grand jury, including Turbyfill.

It is the language and the scope of the pardon that is currently at issue. The pardon stated as follows:

WHEREAS, the dispute arising out of these matters is one of public policy which is better addressed in the political arena, and not the courts;

WHEREAS, the best means of correcting any deficiencies in the state merit system is through the legislative and administrative process; and

WHEREAS, other proper and legal means exist to fully investigate any allegations relating to employment decisions, and to provide redress to any Kentuckian who believes that a mistake may have been made in an individual circumstance; and

WHEREAS, the continuation of criminal proceedings sought by the Attorney General would have no effect on the circumstances of any individual who may have been excluded from employment; and

WHEREAS, Section 77 of the Constitution of Kentucky grants authority to the Governor of the Commonwealth of Kentucky "to remit fines and forfeitures, commute sentences, grant reprieves and pardons"; and

WHEREAS, in all aspects of my life I have been guided by a desire for justice and basic human decency, and by these actions that I take today, I believe that justice will be served.

NOW, THEREFORE, in consideration of the foregoing, and by virtue of the authority vested in me by Section 77 and related provisions in the Constitution of the Commonwealth of Kentucky, I, ERNIE FLETCHER, Governor of the Commonwealth of Kentucky, do hereby grant a full, complete, and unconditional pardon to ... Basil W. Turbyfill ... and any and all persons who have committed, or may be accused of committing, any offense up to and including the date hereof, relating in any way to the current merit system investigation being conducted by the special grand jury presently sitting in Franklin County, Kentucky and the Office of the Attorney General, including but not limited to any violation of KRS [Kentucky Revised Statutes] Chapter 18A, all statutes within the Kentucky Penal Code, and in particular KRS 18A.095, KRS 18A.111, KRS 18A.140, KRS 18A.990, KRS 522.020, KRS 502.020, KRS 506.030, KRS 506.040, KRS 506.070, KRS 506.080, KRS 524.050, or KRS 524.100. The provisions of this Order shall not apply to Ernie Fletcher, Governor of the Commonwealth of Kentucky.

/s/_____

ERNIE FLETCHER, Governor
Commonwealth of Kentucky

/s/_____

TREY GRAYSON
Secretary of State

On the date of the pardon, Turbyfill was terminated from his state government position.

The initial judicial inquiry into the pardon was prompted by Governor Fletcher's challenge to the Franklin Circuit Court's ruling that despite the pardon, the grand jury could continue issuing indictments even though the indicted individuals would be free from criminal prosecution. A divided Kentucky Supreme Court rendered its decision in *Fletcher*, as relevant to the present controversy, the majority concluded that: (1) the pardon was constitutionally valid; (2) pardons could be issued prior to indictments for the pardoned offenses; (3) acceptance of the pardon was assumed; and (4) the circuit court was required to inform the grand jury of the issuance of the pardons and its effect.

While the case was pending, the EBEC opened a preliminary investigation regarding Turbyfill's role in the violations of the merit system laws and on June 1, 2007, filed an "Allegation of Violations" in which the EBEC sought to fine Turbyfill and publicly reprimand him. Specifically, the EBEC charged that Turbyfill violated KRS 11A.020, which provides in part:

No public servant, by himself or through others, shall knowingly:

(a) Use or attempt to use his influence in any matter which involves a substantial conflict between his personal or private interest and his duties in the public interest;

(b) Use or attempt to use any means to influence a public agency in derogation of the state at large;

For each violation of KRS 11A.020, KRS 11A.100(3)(e) authorizes the EBEC to impose a maximum penalty of $5,000.

Turbyfill filed a motion to dismiss with EBEC's hearing officer arguing that the violations alleged by the EBEC were the same charged in the criminal indictment and, therefore, were encompassed within the Governor's pardon. After his motion was denied, he filed a petition for judicial review in the Boyle Circuit Court, which was also denied, and this appeal followed. Turbyfill contends that the pardon was full and unconditional and embraced not only criminal proceedings but also those pursued by administrative agencies, including the EBEC.

■ Preliminary to our discussion, we point out that the issue presented is a challenge to the EBEC's jurisdiction over Turbyfill and does not concern any factual matters pending before the EBEC. If Turbyfill is correct and the pardon applies to any consequences to be imposed by the EBEC, as a matter of law, the EBEC is precluded from taking further action against Turbyfill. *Jackson v. Rose,* 223 Ky. 285, 3 S.W.2d 641, 643 (1928). Because irreparable injury could result if the EBEC acted in contravention of a valid and applicable pardon, Turbyfill was not required to await the EBEC's resolution of its investigation before pursuing judicial recourse. *See Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557 (1948).

■ The issues of the scope of Governor Fletcher's pardon and the constitutional and statutory interpretation required are purely matters of law subject to *de novo* review. *Board of Com'rs of City of Danville v. Davis,* 238 S.W.3d 132, 135 (Ky. App.2007).

■ The power to issue pardons is granted to the Governor in Section 77 of the Kentucky Constitution, which provides that the Governor "shall have power to remit fines and forfeitures, commute sentences, grant reprieves and pardons...." A pardon is the "act or an instance of officially nullifying punishment or other legal consequences of a crime." *Anderson v. Commonwealth,* 107 S.W.3d 193, 196 (Ky.2003), quoting *Black's Law Dictionary* (7th ed. 1999). The breadth of a pardon is subject to the discretion of the Governor and may be full or partial: a full pardon restores the offender's civil rights "without qualification" and a partial pardon exonerates the offender "from some but not all of the punishment or legal consequences of a crime." *Cheatham v. Commonwealth,* 131 S.W.3d 349, 350 (Ky.App.2004). Turbyfill maintains that Governor Fletcher's pardon

was a "full" pardon that applied to any legal consequence that related to matters investigated by the grand jury, including those conducted by the EBEC.

■ Turbyfill's contention is premised on his assumption that an EBEC proceeding is a legal consequence of a crime. He analogizes his situation to that where the offender's civil rights are fully restored following a full and complete pardon. *See Anderson,* 107 S.W.3d at 196. Our Supreme Court has previously discussed the pardon at issue and although the issues presented in *Fletcher* were in the context of pending grand jury proceedings, the Court provided guidance on the scope of gubernatorial pardons.

In *Fletcher,* the Court broadly stated that "any person falling within the class specified by the Governor's pardon now holds a right, by virtue of the constitutional force of the pardon, to be free of any further legal proceedings." *Fletcher,* 192 S.W.3d at 364. Quoting *Nelson v. Commonwealth,* 128 Ky. 779, 109 S.W. 337, 338 (1908), the Court in *Fletcher* emphasized that a pardon relieves the offender from "all the consequences which the law has annexed to the commission of the public offense of which he has been pardoned...." *Id.* at 362. However, the Court continued and distinguished legal consequences which directly flow from the criminal act and those that are collateral consequences of the same acts:

A pardon does not prevent any and all consequences of the pardoned offense: collateral consequences of the offense may still follow. For example, an attorney who has been pardoned for the offense of forgery may not be punished for that crime, but may be disbarred as a result of that offense. Our predecessor court also recognized that a gubernatorial pardon does not restore the character

of the witness/pardonee, so that he or she could still be impeached as a felon. Thus, while a pardon will foreclose punishment of the offense itself, it does not erase the fact that the offense occurred, and that fact may later be used to the pardonee's detriment.

*Id.* at 362–363 (citations omitted). The Court considered the effect of the pardon on grand jury investigations and indictments which are "stages in the criminal prosecution of the offense itself." *Id.* at 363. Therefore, the Court held that an indictment was not a collateral consequence of the criminal act and that the pardon was applicable to grand jury proceedings. In contrast, an EBEC proceeding is not necessarily a precursor to a criminal prosecution and, therefore, presents this Court with the novel issue of whether the pardon applies to the actions taken by the EBEC against those who benefited from Governor Fletcher's pardon.

It is the consistent view that a civil administrative proceeding initiated by a government agency is not dependent upon or a consequence of a criminal proceeding. In *Louisville Civil Service Board v. Blair,* 711 S.W.2d 181 (Ky.1986), a police officer argued that a reversal of his criminal conviction precluded disciplinary action on the same grounds. His double jeopardy claim was rejected. After noting that a criminal trial and an administrative proceeding are distinct because the parties, the evidentiary standards, and the standard of proof differ, the Court held that the administrative hearing was required because of the employee's conduct, not because he was convicted or acquitted of a crime. *Id.* at 183–184. Similarly, we conclude that the allegation that Turbyfill violated KRS 11A.020 is not criminal in nature and is collateral to the criminal proceedings; therefore, the EBEC proceeding is not subject to Governor Fletcher's pardon.

■ Although the designation of a statute as a civil remedy is not conclusive, absent clear proof the Court will not transform the legislature's characterization of a civil remedy into a criminal penalty. *Burnett v. Commonwealth,* 3 S.W.3d 359 (Ky. App.1999).

■ KRS 11A.100(3)(e) clearly states that the remedy is a civil penalty imposed for a violation of KRS 11A.020 and is separate and distinct from any possible criminal consequences provided for in KRS 11A.100(5) for violations of KRS 11A.040. The EBEC is not empowered to impose any criminal sanctions, leaving any criminal penalties to be pursued by the Office of the Attorney General. Its function is limited to "promote ethical conduct of present and former public employees...." *Executive Branch Ethics Com'n v. Stephens,* 92 S.W.3d 69, 73 (Ky.2002). Thus, Turbyfill must demonstrate that despite the legislature's language to the contrary, the statutory scheme is so punitive in purpose or effect as to transform it into a criminal penalty. *Burnett,* 3 S.W.3d at 361.

Relying on *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Court in *Burnett* set forth seven factors to consider when determining whether a penalty is criminal or civil:

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative pur-

pose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. (Citations omitted).

*Id.* at 361.

As applied to this case, the factors do not preempt the legislature's express characterization of the remedies available to the EBEC as civil. Although a monetary sanction is available, such sanctions are not an affirmative disability or restraint, are not historically regarded as punishment, and are widely accepted as an enforceable sanction through a civil proceeding. *Id.*

The third factor, scienter, is not relevant because the monetary penalty does not depend upon the actor's intent.

The final four factors focus upon the purpose of the statute and the relationship of the sanction to that purpose. The requirement that public officers be free from corruption and unethical conduct is beyond debate. Although the potential sanctions contained in KRS 11A.100(5) are intended to deter such behavior, there is a significant public purpose for its existence, and the potential monetary sanctions are infinitesimal when compared to that purpose.

In summary, the factors do not sufficiently weigh in Turbyfill's favor so that the language of the legislature that the statute is a civil remedy can be ignored.

Although Turbyfill admits that a pardon could not preclude civil actions by private individuals against a wrongdoer, he argues that the EBEC is a state agency seeking to enforce violations of state law and, therefore, is a proceeding within the purview of Governor Fletcher's pardon. We reject his contention for two reasons.

■ The first has been set forth in our discussion. A pardon nullifies punishment or the legal consequences of a crime, and its effect is to protect from punishment for the crime committed, and for no other. *Nelson,* 109 S.W. at 339. Because the EBEC proceeding is a collateral civil action, the pardon cannot preclude its action. As stated in *Nelson:*

[I]t has been held that, while the general effect of a pardon as to the restoration of rights and privileges and the creating of a new credit and capacity may be conceded, the fact that a pardon has been granted to a person convicted of an offense cannot warrant the assertion that such a person is as honest, reliable, and fit to hold a public office as if he had constantly maintained the character of a law-abiding citizen. Hence it has been held that the fact that a person has been convicted of offenses disqualifying him to hold the position of a police officer is not altered or affected by the pardon, and he may still be held unfit for the office. 24 Am. & Eng. Encyc. of Law, p. 588; *State v. Hawkins,* 44 Ohio St. 117, 5 N.E. 228 [ (1886) ].

*Id.* at 338.

Our second reason is found in the language of Governor Fletcher's pardon which states that the "best means of correcting any deficiencies is through the legislative and administrative process" and acknowledges that there "are other proper and legal means to fully investigate any allegations and to provide redress...." It further states that the continuation of *criminal proceedings* would have no effect on the circumstances of any individual excluded from employment. (emphasis ours). Finally, Governor Fletcher's pardon lists violations of specific criminal statutes but makes no reference to KRS 11A.020. The reasonable conclusion is that if the pardon purported to include EBEC administrative

actions, the governor would have included KRS 11A.020 in his pardon.

We agree with the well-written opinion of the Boyle Circuit Court. Because the allegations made by the EBEC concern only civil matters, Turbyfill remains subject to the EBEC's jurisdiction.

Based on the foregoing, the order of the Boyle Circuit Court is affirmed.

ALL CONCUR.